OPINION. Black, Judge: Issue 1. There is no controversy between the parties that petitioner actually paid G. M. Fontaine $33,334.50 in 1945 and $23,362,.50 in 1946, for services rendered to her under a written contract for business management services. Of these amounts the Commissioner has allowed $6,694.33 in 1945 and $4,674.06 in 1946, and has disallowed the balance on the ground of unreasonableness. The applicable statute and regulations are printed in the margin.[1] We think the payments which petitioner made to Fontaine in 1945 and 1946 for his services as her business manager in those years came within both the letter and the spirit of the Commissioner’s regulations printed in the margin. The Commissioner has allowed petitioner only part of the amount which petitioner actually paid Fontaine as resonable compensation for his services and has disallowed the balance apparently on the ground that it represented some kind of support which petitioner was contributing to her stepfather, Fontaine, and, through him, to petitioner’s mother, Lilian Fontaine. The evidence completely refutes any justification for such a theory. In the first place, the evidence shows that Fontaine was a businessman of some means of his own and was amply able to support his wife and was in no need of help from petitioner or anyone else. In second place, the evidence shows that while the relations between petitioner and Fontaine were friendly, they were by no means cordial and that the contract under which the payments were made was strictly a business contract and one which was made at arm’s length. The evidence shows that petitioner, upon realizing her dream of becoming a well-known artist in her profession, had acquired little or no knowledge of business affairs and seemingly had no desire to learn of them, preferring to leave such matters to others in whom she had confidence. For this purpose, she turned to Fontaine, her stepfather, who, notwithstanding personal trouble between them which resulted in her leaving home at 16 years of age, was respected by petitioner as a man of integrity and good business judgment. For services which she considered valuable and essential to one in her position, she agreed to pay him in the first years of his services 25 per cent and in later years, including the two taxable years before us, 15 per cent of her earnings in any particular year. Fontaine’s compensation was entirely contingent. Neither party knew at the time the contract was made how much Fontaine would receive in the years 1945 and 1946. They could not know, and although it is perhaps true that the payments which were actually made to Fontaine under the contract exceeded the expectations of both parties when the contract was made, nevertheless it seems to us that the obligation of petitioner to pay was a legal obligation and one which she was both morally and legally expected to perform. Generally speaking, if contingent compensation is paid pursuant to a free bargain between the employer and the individual made before the services are rendered, not influenced by any consideration on the part of the employer other than that of securing on fair and advantageous terms the services of the individual, it should be allowed as a deduction even though in the actual working out of the contract it may prove to be greater than the amount which would ordinarily be paid. Regs. 111, sec. 29.23 (a)-6 (2). See California Vegetable Concentrates, Inc., 10 T. C. 1158. On this issue we sustain the petitioner. Issue 2. Respondent states this issue in his brief as follows: 2. Were gifts in the amounts of $811.00 and $918.75 in the year 1945 and a gift in the amount of $775.00 in the year 1947 personal or ordinary and necessary business expenses within the meaning of Section 23 (a) (1) (A) of the Internal Revenue Code? Petitioner contends that the amounts in question were paid by her as business gratuities and were reasonable and that the services rendered to her were commensurate with the outlay. The record discloses that Edith Head, recipient o £ one of the business gratuities, was a well-known clothes designer for women. She designed petitioner’s clothes for use in the film “To Each His Own” for which petitioner won the Academy Award. Petitioner testified that Edith Head’s clothes designing made a definite contribution toward the effect of her characterization in that film. In addition, at petitioner’s request, Edith Head designed some clothes for petitioner for a trip East where she knew she would be photographed frequently. Phyllis Laughton, a recipient of another of the business gratuities here involved, was a dialogue director. She had assisted petitioner in many films beginning in 1941, and petitioner had asked for her services on several pictures. Phyllis Laughton had worked with petitioner after hours when petitioner lacked confidence in the director of a particular film. She was dialogue director on both films petitioner made in 1945, “Well Groomed Bride” and “To Each His Own,” and, in addition, assisted petitioner on many occasions when she had to make speeches and broadcasts. Through his industry as an agent for petitioner, Kurt Frings, the recipient of the third business gratuity, obtained for petitioner a contract for “The Snake Pit” from which petitioner derived a salary of some $208,000. However, because of a contested discharge of petitioner’s former agent, the usual 10 per cent commission could not be paid Frings under the existing rules of the Screen Actors Guild. Since petitioner could not compensate Frings in money, she felt she should give some recognition to him for his efforts and the success thereof. The recognition was evidenced by the business gratuity here involved. We think the evidence discloses that there was a direct relationship between the three foregoing expenditures and petitioner’s business as a professional actress and that the gratuities were business gratuities and not personal gifts. Cf. William Lee Tracy, 39 B. T. A. 578. In Reginald Denny, 33 B. T. A. 738, the amount of the gift was so large that the Board refused to consider it as an ordinary and necessary business expense without a showing that the services were in some way commensurate with the outlay, citing Welch v. Helvering, 290 U. S. 111. In the instant case we think petitioner has clearly made the required showing to support the deductions. On this issue we hold for petitioner. To the extent that these expenditures were not allowed in the determination of the deficiencies they should be allowed under Rule 50. Decisions will be entered under Rule 50. Internal Revenue Code. SEC. 23. deductions PROM GROSS INCOME.' In computing net income there shall be allowed as deductions : (a) Expenses. — ■ (1) Trade or business expenses.— (A) In General. — All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; * * * Regulations 111. See. 29.23 (a)-6. Compensation por Personal Services.— (2) The form or method of fixing compensation is not decisive as to deductibility. While any form of contingent compensation invites scrutiny as a possible distribution of earnings of the enterprise, it does not follow that payments on a contingent basis are to be treated fundamentally on any basis different from that applying to compensation at a flat rate. Generally speaking, if contingent compensation is paid pursuant to a free bargain between the employer and the individual made before the services are rendered, not influenced by any consideration on the part of the employer other than that of securing on fair and advantageous terms the services of the individual, it should be allowed as a deduction even though in the actual working out of the contract it may prove to be greater than the amount which would ordinarily be paid. (3) In any event the allowance for the compensation paid may not exceed what is reasonable under all the circumstances. It is in general just to assume that reasonable and true compensation is only such amount as would ordinarily be paid for like services by like enterprises under like circumstances. The circumstances to be taken into consideration are those existing at the date when the contract for services was made, not those existing at the date when the contract is questioned.