HARDAWAY MOTOR COMPANY, PETITITONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 31349.   Promulgated July 30, 1952.

*Bertram S. Boley, Esq., Kenneth L. Hewitt, Esq.,* and *J. Q. Davidson, Esq.,* for the petitioner.

*Newman A. Townsend, Jr., Esq.,* for the respondent.

### FINDINGS OF FACT AND OPINION.

RAUM, *Judge:* In a notice of deficiency dated August 21, 1950, the Commissioner asserted deficiencies in excess profits tax for the years 1944 and 1945 in the amounts of $15,446.36 and $14,904.68, respectively. These deficiencies are based exclusively upon that portion of petitioner's excess profits taxes for 1944 and 1945 the payment of which it had elected to defer under section 710 (a) (5) of the Internal Revenue Code,[1] pending the consideration of its claims to relief

---

[1] SEC. 710. IMPOSITION OF TAX.

　(a) IMPOSITION.—

　　　*　　　*　　　*　　　*　　　*　　　*　　　*

　　(5) DEFERMENT OF PAYMENT IN CASE OF ABNORMALITY.—If the adjusted excess profits net income (computed without reference to section 722) for the taxable year of a taxpayer which claims on its return, in accordance with regulations prescribed by the Commissioner with the approval of the Secretary, the benefits of section 722, is in excess of 50 per centum of its normal tax net income for such year, computed

under section 722. Cf. *Tribune Publishing Co.*, 17 T. C. 1228, 1236–1237. Petitioner has conceded that it is not entitled to any relief under section 722. Accordingly, the deficiencies asserted by the Commissioner are correct, unless his action is precluded by the statute of limitations, as extended by the last sentence of section 710 (a) (5).[2] The parties have stipulated most of the facts,[3] and the facts thus stipulated are hereby incorporated in our findings.

Petitioner, a Georgia corporation, filed its excess profits tax returns for the calendar years 1940, 1941, 1944, and 1945, with the collector of internal revenue for the district of Georgia. It also filed timely applications for relief under section 722 of the Internal Revenue Code for those years claiming a constructive average base period net income of $44,263.93 for 1940, and $76,085.06 for each of the years 1941, 1944, and 1945.

In June 1948, petitioner executed and filed with the Internal Revenue Agent in Charge at Atlanta, Georgia, Treasury Department Form EPC–1, as follows:

### AGREEMENT TO AMOUNT OF CONSTRUCTIVE AVERAGE BASE PERIOD NET INCOME DETERMINED UNDER SECTION 722, INTERNAL REVENUE CODE

Applications for relief pursuant to the provisions of Section 722 of the Internal Revenue Code, having been filed by the taxpayer and considered by the Commissioner, the taxpayer _____ Hardaway Motor Company _____
                                                                                                    (Name)
of _____ Columbus, Georgia _____
                                                        (Address)
for the purpose of computing the excess profits credit hereby consents and agrees to the determination of Constructive Average Base Period Net Income in

_____

without the credit provided in section 26 (e) (relating to adjusted excess profits net income) the amount of tax payable at the time prescribed for payment may be reduced by an amount equal to 33 per centum of the amount of the reduction in the tax so claimed. For the purposes of section 271, if the tax payable is the tax so reduced, the tax so reduced shall be considered the amount shown on the return. Notwithstanding any other provision of law or rule of law, to the extent that any amount of tax remaining unpaid pursuant to this paragraph is in excess of the reduction in tax finally determined under section 722, such excess may be assessed at any time before the expiration of one year after such final determination.

[2] The basic period of limitations of three years after the return was filed (section 275) is made applicable to excess profits taxes by the provisions of section 729 (a). The returns herein for 1944 and 1945 were filed on March 15, 1945, and March 14, 1946, respectively. As to the year 1944, petitioner executed a timely waiver extending the period to June 30, 1949. No waiver was executed with respect to the year 1945. Accordingly, the Commissioner's action herein is untimely unless it falls within the extended 1-year period provided by section 710 (a) (5).

[3] In addition, petitioner has submitted a deposition of Henry J. Merry, former Chairman of the Excess Profits Tax Council and of the Executive Committee of the Excess Profits Tax Council, Bureau of Internal Revenue.

accordance with the provisions of Section 722 of the Internal Revenue Code for the excess profits tax taxable years and in the respective amounts as follows:

| Taxable year ended | Constructive Average Base Period Net Income |
|---|---|
| 12/31/40 | $9, 047. 67 |
| 12/31/41 | 11, 835. 27 |
| 12/31/44 | None |
| 12/31/45 | None |

HARDAWAY MOTOR COMPANY
_____
(Taxpayer)

COLUMBUS, GEORGIA
_____
(Address)

By   B. H. Hardaway, Jr.,
_____
(Title)    *President*

Date June 17, 1948.

That form had previously been transmitted to petitioner by the Internal Revenue Agent in Charge at Atlanta, and when executed, reflected an understanding reached between petitioner and local representatives of the Bureau of Internal Revenue as to petitioner's applications for relief for the years 1940, 1941, 1944, and 1945. On July 15, 1948, the Section 722 Field Committee [4] at Atlanta made a "Certification of Field Determination to the Excess Profits Tax Council" for the 4 years involved. That certification recommended or "certified" as a constructive average base period net income for each of the 4 years 1940, 1941, 1944, and 1945, the identical amount contained in the agreement (Form EPC–1) which petitioner had previously executed, namely, $9,047.67 and $11,835.27 for 1940 and 1941, respectively, and "none" for 1944 and 1945. The certification was received by the Excess Profits Tax Council on July 19, 1948, and the findings and recommendations contained therein were reviewed and approved by a panel of the Excess Profits Tax Council in October 1948.

On November 2, 1948, the Executive Committee of the Excess Profits Tax Council adopted a motion approving the action of the panel with respect to petitioner's applications for relief. In accordance with the

---

[4] The administrative machinery within the Bureau of Internal Revenue for processing applications for relief under section 722—including the Excess Profits Tax Council, the Executive Committee of the Excess Profits Tax Council, and the Section 722 Field Committees—is set forth in Mim. 6035, 1946–2 C. B. 97; Mim. 6044, 1946–2 C. B. 97; Mim. 6061, 1946–2 C. B. 103; E. P. C. 1, 1946–2 C. B. 104; E. P. C. 2, 1946–2 C. B. 110; Mim. 6323, 1948–2 C. B. 102; E. P. C. 33, 1948–2 C. B. 103; E. P. C. 34, 1948–2 C. B. 106; and E. P. C. 39, 1949–1 C. B. 140.

practice of the Bureau of Internal Revenue in handling applications for relief under section 722 (see footnote 4, *supra*), the approval by the Executive Committee was the last point in the administrative process at which the petitioner's claim to a constructive average base period net income would be considered.[5] However, the action taken by the Executive Committee was not cast in the form of a determination as to petitioner's correct tax liability. Such determination remained yet to be made, and it was subsequently made, as will appear presently, in the name of the Commissioner by the Internal Revenue Agent in Charge.

By letter dated November 23, 1948, Henry J. Merry, Chairman of the Excess Profits Tax Council, notified the Internal Revenue Agent in Charge at Atlanta of the November 2, 1948, decision as to the years 1940, 1941, 1944, and 1945. That letter was the only notice sent by the Council to any unit of the Bureau of Internal Revenue with respect to its action on petitioner's applications for relief under section 722, and the letter contained the following:

Your attention is invited to the fact that the decision of the Council relates to the determination of constructive average base period net income only, for the taxable years involved.

The case is returned to you for disposition in accordance with Commissioner's Mimeograph R. A. 1529,[6] dated July 31, 1946.

Also, by letter dated November 23, 1948, which was mailed to petitioner by ordinary mail and not by registered mail, Henry J. Merry, Chairman, Excess Profits Tax Council, notified petitioner of the action taken on November 2, 1948, by the Executive Committee with respect to the constructive average base period net income for the 4 years involved. That letter concluded with a statement that:

Such determination with respect to the application (s) for relief has (have) been transmitted to the Income Tax Unit of the Bureau of Internal Revenue for appropriate action.

Thereafter, by letter dated December 1, 1948, the Internal Revenue Agent in Charge notified petitioner that its applications for relief under section 722 for 1940 and 1941 had been considered; that the Excess Profits Tax Council had made a determination of constructive average base period net income; and that petitioner's income and excess profits tax liability for those 2 years had been redetermined in an attached statement in accordance with the determination of constructive average base period net income. The letter invited petitioner, within 15 days, to "record your agreement to the deficiency in tax or overassessments set forth in the attached statement by execut-

[5] In some circumstances, further action might be taken by the Executive Committee if it were requested to reconsider its action. However, no such request was made here, and there in fact never was any reconsideration of the Executive Committee's action of November 2, 1948.

[6] Commissioner's Mimeograph R. A. 1529 is the same as Mim. 6044, 1946–2 C. B. 97.

ing and returning to this office the enclosed form of agreement." The concluding paragraph of the letter was as follows:

Upon receipt of the properly executed agreement or upon the expiration of the 15-day period, disposition of the case will be effected in accordance with Section 272 and Section 732 of the Internal Revenue Code.

Within the 15-day period, petitioner in fact executed the enclosed agreement (Form 874) and returned it to the Treasury Department. In that agreement it assented to the assessment and collection of a deficiency in income tax for 1941 in the amount of $108.05, and it accepted as correct overassessments in excess profits taxes for 1940 and 1941 in the amounts of $1,669.11 and $348.55, respectively.

The execution of the agreement and foregoing interchange between the petitioner and the Internal Revenue Agent in Charge finally culminated in a formal determination on behalf of the Commissioner with respect to 1940 and 1941, contained in a letter dated January 7, 1949, which was sent to petitioner by registered mail, and which was signed—

Geo. J. Schoeneman
Commissioner
By William Brusse
Internal Revenue Agent in Charge

The letter advised petitioner that the determination of its excess profits tax liability for the years 1940 and 1941 disclosed overassessments in the amounts of $1,669.11 and $348.55, respectively. Referring to petitioner's applications for relief under section 722 with respect to 1940 and 1941, the letter stated: "Accordingly, the relief requested has been allowed in part." As to the remaining relief originally sought by petitioner with respect to those 2 years, the letter concluded:

In accordance with the requirements of section 732 of the Internal Revenue Code notice is given of the disallowance in part of the claims for refund asserted in your applications for relief.

No appeal was taken to this Court from the Commissioner's determination of January 7, 1949, with respect to the years 1940 and 1941; and the net refunds with respect to the overassessments determined were received by petitioner on or about August 1, 1949.

Neither the letter of December 1, 1948, nor the agreement accompanying that letter which petitioner executed, nor the formal determination of the Commissioner in the letter of January 7, 1949, dealt with petitioner's tax liability for the years 1944 or 1945. They were concerned solely with the years 1940 and 1941.

On August 21, 1950, the Commissioner sent a letter by registered mail to petitioner which is the foundation for the present proceeding. In this letter, petitioner was notified that the determination of its excess profits tax liability for 1944 and 1945 disclosed deficiencies

in the amounts of $15,446.36 and $14,904.68, respectively, and that in making that determination petitioner's applications for relief under section 722 for those years "have been given careful consideration and it has been determined that you have not established your right to the relief requested in such applications." And in connection with the latter, attention was specifically directed to the agreement executed by petitioner in June 1948, in which it had agreed that its constructive average base period net income for 1944 and 1945 was "none." The letter of August 21, 1950, further made it clear that it was not merely a notice of deficiency under section 272, but was also a determination pursuant to section 732 with respect to relief that had been sought under section 722. In this connection, the letter stated:

> In accordance with the provisions of Sections 272 and 732 of the Internal Revenue Code, notice is hereby given of the deficiencies mentioned, and of the disallowance of the claims for refund asserted in your applications for relief (Forms 991).

Petitioner contends that the Commissioner's action in relation to the deficiencies for 1944 and 1945 was not timely within the 1-year period permitted by section 710 (a) (5) which provides:

> * * * Notwithstanding any other provision of law or rule of law, to the extent that any amount of tax remaining unpaid pursuant to this paragraph is in excess of the reduction in tax finally determined under section 722, such excess may be assessed at any time before the expiration of one year after such final determination.

Petitioner argues that the "final determination" referred to in section 710 (a) (5) occurred here on November 2, 1948, when the Executive Committee of the Excess Profits Tax Council finally approved a determination of an average base period net income of "none" for the years 1944 and 1945, or, in the alternative, that it occurred on November 23, 1948, when Henry J. Merry, Chairman of the Excess Profits Tax Council, notified it of that action. Respondent, on the other hand, contends that the final determination specified in section 710 (a) (5) took place no earlier than August 21, 1950, when the Commissioner formally notified petitioner by registered mail that petitioner had not established its right to relief requested in its applications.

We think that petitioner's position cannot be sustained. An analysis of the function of the Excess Profits Tax Council and its position in the administrative framework of the Bureau of Internal Revenue will make this clear.

The Excess Profits Tax Council was constituted a "field group" in the Bureau of Internal Revenue by the Commissioner of Internal Revenue. Mim. 6035, 1946-2 C. B. 97. Its organization was not specifically authorized by statute, and it was established in order to handle issues arising under section 722 within the Bureau. The origi-

nal order of the Commissioner establishing the Council (Mim. 6035, *supra*) described it as having "responsibility for final Bureau action on issues arising under section 722 * * *." And the ruling of the Commissioner issued shortly thereafter with respect to procedure in section 722 cases characterized the authority of the Excess Profits Tax Council as follows (Mim. 6044, 1946–2 C. B. 97) :

* * * Subject to the authority of the Commissioner of Internal Revenue, final jurisdiction within the Bureau of Internal Revenue of all issues arising under the provisions of section 722 of the Internal Revenue Code is hereby vested in the Excess Profits Tax Council. * * *

Subsequently, there was established an Executive Committee in the Excess Profits Tax Council, and the authority of that committee was stated by the Commissioner to be as follows (Mim. 6323, 1948–2 C. B. 102, 103) :

* * * The executive committee shall exercise, for the Commissioner, final authority within the Bureau of Internal Revenue in respect to all issues arising under section 722, including procedure, interpretation, general policy, and determinations made with respect to individual cases.

Thus, it is plain that, within the administrative framework of the Bureau, the Executive Committee of the Council was to have the last word in considering the merits of applications for relief under section 722.[7] The significant thing, however, is that the conclusions reached by the Executive Committee were cast in terms of the taxpayer's constructive average base period net income, thereby providing the measure of the relief, if any, to be granted. There remained the administrative process of translating those conclusions into the dollars and cents liability of the taxpayer—a function that was not performed by the Executive Committee. The Executive Committee transmitted its findings to the Internal Revenue Agent in Charge, who, in the name of the Commissioner, made a determination in terms of either deficiencies in tax or overassessments. That determination was the familiar statutory determination, transmitted to the taxpayer by registered mail, in accordance with sections 272 and 732.

This procedure is well illustrated in this case by the events which occurred in relation to the years 1940 and 1941. The November 2, 1948, decision of the Executive Committee and the Merry letter of November 23, 1948,[8] relied upon by petitioner, dealt with the 4 years

---

[7] A fundamental change in the organization of the Council occurred on April 28, 1952, when, by order of the Commissioner, the Executive Committee was abolished and other basic organizational changes were made. Mim. 6800, Internal Revenue Bulletin, May 26, 1952, p. 8. However, that reorganization does not affect this case, except to the extent that it may show the flexible character of the Council under the Commissioner.

[8] It should be noted that the Merry letter had no official status. It was merely a form letter advising the taxpayer of the outcome of the Council's deliberations, and by its very words it notified the taxpayer that the determination of the Executive Committee had been "transmitted . to the Income Tax Unit of the Bureau of Internal Revenue *for appropriate action."* (Emphasis added.)

1940, 1941, 1944, and 1945. Yet, as to the years 1940 and 1941, there was an interchange of correspondence in December 1948 between petitioner and the Internal Revenue Agent in Charge relating to the precise amount of overassessments to be determined on the basis of the Council's decision, culminating in the final determination of the Commissioner in the letter of January 7, 1949, which was sent to petitioner by registered mail. Clearly, as to the years 1940 and 1941, the "final determination" mentioned in section 710 (a) (5) was neither the November 2, 1948, decision of the Executive Committee nor the Merry letter of November 23, 1948. Rather, the Commissioner's official registered letter of January 7, 1949, in terms of deficiencies and overassessments, was the event with which the statutory "final determination" for 1940 and 1941 was concerned. Similarly, neither the November 2, 1948, decision nor the Merry letter of November 23, 1948, was the "final determination" as to the years 1944 and 1945. And the registered letter of August 21, 1950, with respect to 1944 and 1945, was the counterpart of the January 7, 1949, letter with respect to 1940 and 1941.

The very language of section 710 (a) (5) requires this conclusion for it speaks of "the extent that any amount of the tax remaining unpaid pursuant to this paragraph is in excess of the *reduction in tax finally determined* under section 722 * * *." (Emphasis added.) Thus the statute refers, not to the final determination of a constructive average base period net income—the only function performed by the Council—but to the "reduction in tax finally determined." And the "reduction in tax" is not finally determined until the Commissioner has transmitted the usual statutory notice to the taxpayer by registered mail. To be sure, the determination by the Commissioner may be a purely formal one, merely giving effect to the conclusions already reached by the Council. But until that formal step has been taken, there has been no "final determination" within the meaning of the statute.

The provisions of section 710 (a) (5) here involved are limitations provisions, by means of which petitioner seeks to avoid the payment of taxes which it rightfully owes. It must therefore bring itself within those provisions in order to prevail. These provisions are not to be given an expansive construction. The words must be read naturally, in the light of the structure of the revenue laws, which has long contemplated the sending of a registered letter by the Commis-

832

sioner to the taxpayer reflecting the final determination as to the taxpayer's actual liability.[9]

*Decision will be entered for the respondent.*

---

[9] The fact that Congress legislated in the light of the familiar practice of the sending of notices *by the Commissioner* is suggested by the Report of the Senate Committee on Finance with respect to the provisions for the one-year period of limitations in section 710 (a) (5). See S. Rept. 1383, 80th Cong., 2d Sess., p. 2:

* * * In cases in which the action of the Commissioner is subject to review by the Tax Court under section 732, the determination of a taxpayer's application for relief under section 722 is final upon the expiration of the period for filing a petition for redetermination of the tax by the Tax Court under section 732 (a) or, if such petition is filed, upon the decision of the Tax Court thereon becoming final. In other cases, the determination is final upon the sending of notice to the taxpayer by the Commissioner of his final action on the application. * * *