**HARDAWAY MOTOR CO.**
v.
**COMMISSIONER OF INTERNAL REVENUE.**

No. 14390.

United States Court of Appeals
Fifth Circuit.

Nov. 18, 1953.

J. Q. Davidson, Kenneth L. Hewitt, Columbus, Ga., Bertram S. Boley, Atlanta, Ga. (Swift, Pease, Davidson & Chapman, Columbus, Ga., of counsel), for petitioner.

Charles S. Lyon, H. Brian Holland, Asst. Attys. Gen., Ellis N. Slack, Dept. of Justice, Lee A. Jackson, Hilbert P. Zarky, Louise Foster, Sp. Assts. to Atty. Gen., Charles W. Davis, Chief Counsel, Claude R. Marshal, Sp. Atty., Bureau of Internal Revenue, Washington, D. C., for respondent.

Before HUTCHESON, Chief Judge, and BORAH, and RUSSELL, Circuit Judges.

BORAH, Circuit Judge.

This appeal involves deficiencies in excess profits taxes for the calendar years 1944 and 1945 in the amounts of $15,-446.36 and $14,904.68, respectively, which the Tax Court held were rightfully owed to the Government by petitioner Hardaway Motor Company.

Petitioner, a Georgia corporation, timely filed its excess profits tax returns for the calendar years 1944 and 1945 with the Collector of Internal Revenue for the District of Georgia. However, it did not pay the entire tax liability for either of the years in question at the time of filing its returns but elected to defer a portion thereof under Section 710 (a) (5) of the Internal Revenue Code, 26 U.S.C. 1946 ed., Supp. II, § 710(a) (5). This statute among other provisions hereinafter discussed provides for deferment of payment in case of abnormality, viz., "If the adjusted excess profits net income (computed without reference to section 722) for the taxable year of a taxpayer which claims on its return, in accordance with regulations prescribed by the Commissioner with the approval of the Secretary, the benefits of section 722, is in excess of 50 per centum of its normal tax net income for such year, computed without the credit provided in section 26(e) (relating to adjusted excess profits net income), the amount of tax payable at the time prescribed for payment may be reduced by an amount equal to 33 per centum of the amount of the reduction in the tax so claimed. * * *". Section 722 of the Internal Revenue Code, 26 U.S.C. 1946 ed., § 722, provides in pertinent part that "In any case in which the taxpayer establishes that the tax computed under this subchapter (without the benefit of this section) results in an excessive and discriminatory tax and establishes what would be a fair and just amount representing normal earnings to be used as a constructive average base period net income for the purposes of an excess profits tax based upon a comparison of normal earnings and earnings during an excess profits tax period, the tax shall be determined by using such constructive average base period net income in lieu of the average base period net income otherwise determined under this subchapter. * * * The benefits of this section shall not be allowed unless the taxpayer within the period of time prescribed by section 322 [1] and subject to the limitation as to amount of credit or refund prescribed in such section makes application therefor in accordance with regulations prescribed by the Commissioner with the approval of the Secretary." Invoking Section 722 and filing timely applications on Treasury Department Form

1. Section 322 of the Internal Revenue Code, 26 U.S.C. 1946 ed., § 322, provides in part:

"(b) Limitation on allowance—(1) Period of limitation.

"Unless a claim for credit or refund is filed by the taxpayer within three years from the time the return was filed by the taxpayer or within two years from the time the tax was paid, no credit or refund shall be allowed or made after the expiration of whichever of such periods expires the later. * * *

"(2) Limit on amount of credit or refund.

"The amount of the credit or refund shall not exceed the portion of the tax paid—

"(A) If a return was filed by the taxpayer, and the claim was filed within three years from the time the return was filed, during the three years immediately preceding the filing of the claim."

991 [2] for relief thereunder, petitioner claimed a constructive average base period net income of $76,085.06 for each of the years 1944 and 1945. Petitioner also filed timely Form 991 applications for relief under Section 722 in connection with its excess profits tax returns for the years 1940 and 1941, which applications, though not at issue here, are inseparably connected with the proceedings hereinafter described and their administrative treatment does have some bearing on the procedural question to which we shall presently refer.

In June, 1948, petitioner executed and filed with the Internal Revenue Agent in Charge at Atlanta, Georgia, Treasury Department Form EPC-1. This form recited that applications for relief pursuant to the provisions of Section 722 having been filed by the taxpayer and considered by the Commissioner, the taxpayer for the purpose of computing the excess profits credit thereby consented and agreed to the determination of constructive average base period net income in accordance with the provisions of Section 722 for the excess profits tax taxable years ended December 31, 1941, 1944 and 1945, in the respective amounts of $9,047.67 for 1940, $11,835.27 for 1941, and "None" for 1944 and 1945. Thereafter, on July 15, 1948, the Section 722 Field Committee of the Bureau of Internal Revenue at Atlanta made a "Certification of Field Determination to the Excess Profits Tax Council" which recommended or certified as a constructive average base period net income for each of the years 1940, 1941, 1944 and 1945 the identical amount contained in the form EPC-1 agreement which petitioner had previously executed. The certification was received by the Excess Profits Tax Council of the Bureau on July 19, 1948, and the findings and recommendations contained therein were reviewed and approved by a panel of the Excess Profits Tax Council in October, 1948.

On November 2, 1948, the Executive Committee of the Excess Profits Tax Council adopted a motion approving the action of the panel with respect to petitioner's applications for relief. In a letter dated November 23, 1948, Henry J. Merry, Chairman of the Council, notified the Internal Revenue Agent in Charge at Atlanta of the November 2, 1948 decision with respect to its action on petitioner's applications for relief under Section 722 as to the years 1940, 1941, 1944 and 1945. On the same date Merry mailed a form letter to petitioner by ordinary mail notifying it of the action taken on November 2nd by the Executive Committee with respect to the constructive average base period net income for the four years involved and stated that "Such determination with respect to the application (s) for relief has (have) been transmitted to the Income Tax Unit of the Bureau of Internal Revenue for appropriate action."

Subsequently, and by a letter dated December 1, 1948, the Internal Revenue Agent in Charge wrote petitioner as follows:

"Your applications for relief filed under the provisions of Section 722 of the Internal Revenue Code for the taxable years ended December

---

2. Treasury Regulations 112, § 35.722–5(b) provides:

"*Method of filing and information required.* The application on Form 991 (revised January, 1943) shall be filed in duplicate with the Commissioner of Internal Revenue, Washington, D. C., attention of the Income Tax Unit, Clearing Division, Claims Control Section, except in those cases in which the taxpayer claims on its excess profits tax return the benefit of a tax deferment pursuant to section 710(a) (5). In such latter event, the application shall be executed in duplicate and attached to the taxpayer's excess profits tax return on Form 1121 for the taxable year for which such deferment is claimed. *Such application shall, in accordance with the provisions of this section, and the instructions on Form 991 (revised January, 1943) set forth the following information:* * * *

"(15) *The amount of refund or credit for which the application is a claim;* * * *." (Emphasis supplied.)

31, 1940, and December 31, 1941, have been considered and a determination of constructive average base period net income pursuant to the provisions of such section has been made by the Excess Profits Tax Council.

"As a consequence of the determination of constructive average base period net income under Section 722 your income and excess profits tax liability for the years designated has been redetermined as set forth in detail in the attached statement.

"Action in this connection will be suspended for a period of 15 days from the date of this letter, during which you may record your agreement to the deficiency in tax or overassessments set forth in the attached statement by executing and returning to this office the enclosed form of agreement.

"Upon receipt of the properly executed agreement or upon the expiration of the 15-day period, disposition of the case will be effected in accordance with Section 272 and Section 732 of the Internal Revenue Code."

Within the fifteen-day period, petitioner executed the enclosed agreement, which was a Treasury Department Form 874, and returned it to the Treasury Department. In that agreement petitioner among other things accepted as correct overassessments in excess profits taxes for 1940 and 1941 in the amounts of $1,669.11 and $348.55, respectively. Following the execution of the agreement the Commissioner on January 7, 1949,

advised the taxpayer by registered letter that the determination of its excess profits tax liability for the taxable years 1940 and 1941, disclosed the aforementioned overassessments; noted that the taxpayer had executed an acceptance of these overassessments and advised that they would be made the subject of certificates of overassessment which would be transmitted to the taxpayer in due course by the collector for its district and would be applied by that official in accordance with the provisions of section 322(a) of the Internal Revenue Code. The letter further recited that in making this determination of its excess profits tax liability the following factors were considered: (1) its applications for relief (Forms 991) under Section 722; (2) its June 17, 1948, agreement with respect to the allowance of a constructive average base period net income in the amounts stated for the years 1940 and 1941. The taxpayer was further advised that the relief requested had been allowed in part and that "In accordance with the requirements of section 732 [3] of the Internal Revenue Code notice is given of the disallowance in part of the claims for refund asserted in your applications for relief." No appeal was taken from the Commissioner's final determination of tax liability for the years 1940 and 1941.

On August 21, 1950, the letter around which the present controversy is centered was sent by the Commissioner to the petitioner by registered mail. In this letter, petitioner was advised that the determination of its excess profits tax liability for the taxable years ended December 31, 1944 and 1945, disclosed deficiencies of $15,446.36 and $14,904.68,

---

**3.** Section 732 of the Internal Revenue Code, 26 U.S.C., 1946 ed., § 732, provides in part:

"(a) * * * If a claim for refund of tax under this subchapter for any taxable year is disallowed in whole or in part by the Commissioner, and the disallowance relates to the application of section * * * 722, relating to abnormalities, the Commissioner shall send notice of such disallowance to the taxpayer by registered mail. Within ninety days after

such notice is mailed (not counting Saturday, Sunday, or a legal holiday in the District of Columbia as the ninetieth day) the taxpayer may file a petition with The Tax Court of the United States for a redetermination of the tax under this subchapter. If such petition is so filed, such notice of disallowance shall be deemed to be a notice of deficiency for all purposes relating to the assessment and collection of taxes or the refund or credit of overpayments."

respectively, and that in making this determination petitioner's applications for relief under Section 722 for the years aforementioned had been given careful consideration and it had been determined that petitioner had not established its right to the relief requested in its applications. It was noted that petitioner had executed an agreement on June 17, 1948, in which it had agreed that its constructive average base period net income for 1944 and 1945 was "None." However, and for the reason that there had been a deferment under Section 710(a) (5) of the tax liability shown on its returns, petitioner was advised that the determination of its excess profits tax liability resulted in a deficiency for each of those taxable years. The letter alluded to the provisions of Sections 272[4] and 732 of the Internal Revenue Code and stated that in accordance with these provisions "notice is hereby given of the deficiencies mentioned, and of the disallowance of the claims for refund[5] asserted in your applications for relief * * *." Petitioner was further advised of its right under the Internal Revenue Code to file with the Tax Court a petition for a redetermination of its excess profits tax liability within ninety days from the date of the mailing of this letter. Thereafter, and within the ninety days prescribed, petitioner instituted the present suit in the Tax Court.

The petition as amended recites that the determination of tax set forth in the notice of deficiency is erroneous in the following particulars among others: (1) in failing to find that a final determination of petitioner's excess profits tax liabilities under Internal Revenue Code Section 722 for each of the years ended December 31, 1944, and December 31, 1945, occurred either on November 2, 1948, or on November 23, 1948; (2) in failing to find that the assessment and collection of petitioner's excess profits tax in the amount of $15,446.36 for the year ended December 31, 1944, and in the amount of $14,904.68 for the year ended December 31, 1945, are each barred by the one year statute of limitations of Internal Revenue Code Section 710(a) (5). The prayer of the petition was that the Court should determine that there was no deficiency in excess profits tax for either the year ended December 31, 1944, or the year ended December 31, 1945; that the final determination that petitioner was entitled to no amount of constructive average base period net income under Section 722 for each of the years in question was made more than one year prior to the mailing of the respondent Commissioner's notice of deficiency dated August 21, 1950; that the final determination that petitioner was entitled to no reduction in excess profits tax under Section 722 for each of said years was made more than one year prior to the mailing of the August 21 notice of deficiency; and that the assessment and collection of the $15,446.36 excess profits tax for the year 1944 and the $14,904.68 tax for 1945 are barred by the aforementioned statute of limitations. The answer of the Commissioner joined issue with the petitioner and a trial was had on stipulated facts and the deposition testimony of Henry J. Merry, none of which evidence was in

4. Section 272 of the Internal Revenue Code, 26 U.S.C., 1946 ed., § 272, provides in part "(a) (1) * * * If in the case of any taxpayer, the Commissioner determines that there is a deficiency in respect of the tax imposed by this chapter, the Commissioner is authorized to send notice of such deficiency to the taxpayer by registered mail. Within ninety days after such notice is mailed (not counting Saturday, Sunday, or a legal holiday in the District of Columbia as the ninetieth day) the taxpayer may file a petition with The Tax Court of the United States for a redetermination of the deficiency. No assessment of a deficiency in respect of the tax imposed by this chapter and not distraint or proceeding in court for its collection shall be made, begun, or prosecuted until such notice has been mailed to the taxpayer, nor until the expiration of such ninety-day period, nor, if a petition has been filed with the Tax Court, until the decision of the Tax Court has become final."

5. See Note 2.

dispute below or is questioned here. The Tax Court made appropriate findings and in a clear and well reasoned opinion held [6] that the Commissioner's action was not untimely in that the one-year period of limitations in Section 710(a) (5) did not begin to run either from November 2, 1948, the date of the action of the Executive Committee, or November 23, 1948, the date of the letter sent to petitioner by the Chairman of the Excess Profits Tax Council. The Court further held that the reduction in tax was not finally determined until the Commissioner had taken the formal step of transmitting the usual statutory notice to the taxpayer by registered mail. Thereafter, and pursuant to its determination the Court entered its decision holding that there are deficiencies in excess profits tax for the years 1944 and 1945 in the amounts of $15,446.36 and $14,904.68, respectively. This appeal followed.

The important question here is whether the assessment and collection of the deficiencies found in petitioner's excess profits taxes are barred by the one-year statute of limitations of Section 710(a) (5), which provides that "Notwithstanding any other provision of law or rule of law, to the extent that any amount of tax remaining unpaid pursuant to this paragraph is in excess of the reduction in tax finally determined under section 722, such excess may be assessed at any time before the expiration of one year after such final determination." Petitioner contends that the final determination in its case was made on November 2, 1948, when the Executive Committee of the Excess Profits Tax Council (while acting for the Commissioner) made a final determination on petitioner's applications for relief under Section 722 in conformity with form EPC-1 executed and filed by petitioner. In the alternative, that the "final" determination made on November 2, 1948, became final on November 23, 1948, when notice of such final determination was sent to petitioner. A further and related contention

urged is that immediately upon the Executive Committee making a final determination with respect to petitioner's constructive average base period net income, the reduction in tax was fixed and no separate or additional act by the Commissioner was necessary for the making of a final determination. We do not at all agree.

The Excess Profits Tax Council was constituted a field group in the Bureau of Internal Revenue by the Commissioner of Internal Revenue. Mim. 6035, 1946–2 Cum. Bull. 97. Its organization was not authorized by statute and it was established in order to administer claims filed by corporations for reduction of their excess profits taxes under Section 722 of the Internal Revenue Code. The members of the Council who are not members of the Executive Committee participate in an advisory capacity in the establishment of interpretative policies, and, as their principal function, consider individual cases with respect to which they make determinations of constructive average base period net income if any, subject to review by the Executive Committee of the Excess Profits Tax Council. The Committee in turn is authorized to exercise, for the Commissioner, final authority within the Bureau in respect to all issues arising under Section 722, including procedure, interpretation, general policy and determinations made in individual cases. Mim. 6323, 1948–2 Cum. Bull. 102, 103. The deposition testimony of Henry J. Merry which was offered in evidence by petitioner makes it quite clear that the action which the Executive Committee and the Council were authorized to take with respect to an application for the benefits of Section 722 does not go beyond a determination of an amount of constructive average base period net income. Neither the Chairman of the Council nor any member or employee thereof or the Executive Committee has authority to issue for the Commissioner a statutory notice pursuant to Section 272 or Section

6. 18 T.C. 824.

732 of the Internal Revenue Code or any final determination of excess profits tax liability of a taxpayer.

It affirmatively appears that the Section 722 Field Committee pursuant to the authority [7] vested in it merely recommended or certified a constructive average base period net income for each of the years 1940, 1941, 1944 and 1945 and its findings and recommendations were approved by a panel of the Council and thereafter by the Executive Committee of the Council. In the light of the foregoing petitioner argues that since such income for 1944 and 1945 was determined as "None" its reduction in tax for those years was "None". Consequently, when the Executive Committee exercised its authority it was then immediately "determined" that the deferred excess profits tax for 1944 and 1945 remaining unpaid under Section 710(a) (5) exceeded by $15,446.36 and $14,904.68 respectively the reduction in tax determined under Section 722. We think there is no force in this contention.

This argument overlooks the fact that neither the Excess Profits Tax Council nor its Executive Committee was invested with the authority to make a determination of a reduction in tax under Section 722, and that it is such a determination which starts the period running under Section 710(a) (5). In the letter of November 23, 1948, which the Chairman of the Council sent to the agent in charge the agent's attention was specifically directed to the fact that the decision of the Council related *only* to the determination of constructive average base period net income for the taxable years involved and that the case was being returned for disposition in accordance with the Commissioner's Mimeograph R.A. 1529, dated July 31, 1946, Mim. 6044, 1946–2 Cum. Bull. 97. Section 3 of Mimeograph 6044 provides as follows: "Subject to the authority of the Commissioner of Internal Revenue, final jurisdiction within the Bureau of Internal Revenue of all issues arising under the provisions of section 722 of the Internal Revenue Code is hereby vested in the Excess Profits Tax Council. The Excess Profits Tax Council * * * will have no jurisdiction over any issues arising under any other provisions of the internal revenue laws * * *. In view of the distinctive character of the issues under section 722, the procedures herein set forth provide for consideration of those issues separate and apart from the consideration of issues arising under other provisions of law." Section 9 of this mimeograph significantly provides that even in cases where the taxpayer had agreed to the amount of the constructive average base period net income and the Council had approved the agreement, the audit review division was to be responsible for the administrative disposition of the case and it was required to prepare and transmit section 732 notices, where appropriate, to the internal revenue agent in charge for issuance. Considering the nature of the authority delegated to the Council and its Executive Committee and the relevant statutory provisions and regulations cited, we think it plain that there can be no reduction in tax finally determined under Section 722 at least until the Commissioner has notified the taxpayer by registered mail of his final action on the taxpayer's application for relief under said Section. We accordingly hold that respondent is not barred from assessing and collecting the asserted deficiencies by the one year statute of limitations contained in Section 710(a) (5), Internal Revenue Code.

Judgment affirmed.

HUTCHESON, Chief Judge (concurring).

The main opinion is a remarkably lucid exposition of the unusually complicated matters discussed in it and is completely convincing as to the correctness of its teachings and their result.

7. Mim. 6044, 1946–2 Cum. Bull 97 and E. P.C. Memorandum No. 2, 1946–2 Cum. Bull. at p. 105.

Because, however, the all out use by the appellant of the legislative history of Sections 722 and 710(a) (5) in its brief illustrates the dangers inherent in resorting to such aids to construction when there is no necessity for such resort, I add a word.

As the opinion points out with complete clarity, the controlling question in this case is when the one year limitation provided in Sec. 710(a) (5) [1] commences to run, and the answer to it depends upon a determination of what is the heart of this case, when the "excess of the reduction in tax [is] finally determined". To support its claim, "that this final determination occurred" when the excess profits tax council made its determination, appellant quotes many times in its brief with emphasis supplied by it this language from Report 1383 of the Senate Committee on Finance:

"Section 3 of the Joint Resolution gives the commissioner at least one

year *after the final determination of application for relief under Sec. 722* in which to assess the unpaid tax which was deferred under Sec. 710(a) (5)."

Relying on this statement, from which the argument proceeds and to which it is ever returning, the appellant seeks to read the statute as though the italicized words appeared in it. They do not, and the fact that they do not, both pinpoints the fallacy and the incorrectness of its contention and argument that congress, in the use in Sec. 710(a) (5) of the words, "such final determination", has departed from their recognized and established use in income tax law in connection with tax determination.

I think it is a strained and unnatural construction to give to the words the statute uses the meaning and effect of the italicized words in the committee report, on and from which appellant's argument proceeds.

1. "Notwithstanding any other provision of law or rule of law, to the extent that any amount of tax remaining unpaid pursuant to this paragraph is in excess of the reduction in tax finally determined under section 722, such excess may be assessed at any time before the expiration of one year after such final determination."