CALVERT IRON WORKS, INC., PETITIONER, *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT.

Docket No. 40207.    Filed June 29, 1956.

*Bertram S. Boley, Esq.*, for the petitioner.

*R. V. Bradbury, Jr., Esq.*, and *George J. LeBlanc, Esq.*, for the
respondent.

774

778

OPINION.

JOHNSON, *Judge:* The parties agree that commencement of business and a change of its character in 1937 meet the qualifying factors of section 722 (b) (4) and entitle petitioner to further consideration for relief.

The fact that petitioner meets the initial requirement is important only if the factor "directly results in an increase of normal earnings which is not adequately reflected by its average base period net income computed under section 713." *Wisconsin Farmer Co.*, 14 T. C. 1021; *M. W. Zack Metal Co.*, 22 T. C. 349.

Petitioner is entitled to excess profits tax credits based upon income pursuant to section 713. It had net income of $6,822.05 in 1937, $14,489.36 in 1938, and $26,310.26 in 1939. Net income of $11,149.56 was computed under section 713 (d) (2) for 1936. The base period income, after reflecting adjustments under section 713 (f) and for back taxes, resulted in average base period net income (ABPNI) of $21,802.49 for 1941 and $26,019.20 for each of the remaining taxable years.

Petitioner claimed in its applications for relief under section 722 (b) (4) credits based upon CABPNI of $79,975.82. It contends here that sufficient evidence has been submitted to establish CABPNI of not less than $78,984.48, the amount computed in one of the four methods of reconstruction advanced for consideration.

The contention of petitioner is primarily based upon the theory that between 3 and 4 years were required within which to adequately train personnel to use the increased facilities with competitive maturity. No argument is made of lack of "know-how" to conduct the kind of business carried on before the assets of Austin were acquired. The capacity of the plant acquired in October 1937 is not a decisive

factor. The question is the amount of earnings petitioner would have had in the fiscal year ended January 31, 1940, under base period conditions if it had acquired the facilities 2 years earlier.

In contending that it had not passed through its stage of development by the close of the base period, petitioner points to increases in sales, purchases of steel, and shop expense during the fiscal year ended January 31, 1940, over the previous year and during quarterly and semiannual periods in the fiscal year 1940, and testimony of its president.

The business commenced by petitioner in February 1937 was not a new one. It was a continuation of the activity of the Atlanta Iron Works, Inc., a corporation which, in 1935, became the successor of a partnership carrying on a like business. Massell financed the predecessor corporation and petitioner was organized to obtain capital from him and to give him a controlling interest. There is no proof that sales or income during or at the end of the base period would have been greater if the change from the predecessor to the petitioner had been made 2 years earlier.

The tonnage of steel fabricated by the industry for shipment into Georgia increased from 5,524 tons in 1937 to 9,142 tons in 1938; to 13,819 tons in 1939; and to 17,220 tons in 1940. The increases were in excess of the increases of all shipments by the entire industry during the same periods. The total engineering construction contracts for nine southern States, including Georgia, increased about 50 per cent in 1939 over 1938, and about 85 per cent in 1940 over 1939. The estimated valuation of building construction in Atlanta, based upon building permits, showed some decline in the calendar year 1938 over 1937, but an increase of about 280 per cent in 1939 over 1938.

Petitioner endeavored to obtain contracts which it would be able to perform at a profit, and nothing appearing in the evidence to the contrary, it may be assumed that it shared in this general improvement of business, thereby accounting for a substantial part of its increase in sales and profits in its fiscal years 1939 and 1940, rather than solely to the acquisition of assets of Austin or additional experience. No proof was made by petitioner of inability to obtain more business in its new field due to lack of experience or otherwise.

Calvert testified that with 2 additional years of experience under the push-back rule petitioner would have had sales of from $1,000,000 to $1,250,000, and earnings of at least $75,000 during its last base period year. His opinion of sales was based upon the business done by Austin in 1924, and sales volume of petitioner after the base period. The witness admitted that the type of Austin's business differed from petitioner's. Moreover, sales of Austin during the period 1932 to 1936, inclusive, did not exceed in any year one-third

of the witness's figure, and sales of over $1 million were not reached by petitioner until its fiscal year ended January 31, 1942, a year influenced by the war effort and which may not be taken into account. *Industrial Supplies, Inc.*, 18 T. C. 1067.

The number of petitioner's employees, including executive officers, fluctuated between 66 and 79 from October 27, 1937, to November 1, 1939, when the number was 118. The number on January 31, 1940, was 127. The increase of employees after October 27, 1937, was required for a second shift to complete a particular contract having a time limit, rather than normal growth of the business. To illustrate its growth during a period of development, petitioner also refers us to increases in purchases of steel in 1937, 1938, and 1939 in excess of alleged competitors having plants in nearby States. Without any evidence or assertion to the contrary, we must assume that the businesses of the competitors were fully developed. Increased sales, in spite of such competition, disclose that petitioner's ability to utilize its increased facilities had not only reached normal, but exceeded that of its competitors.

An increased earning level during the last base period year would not benefit petitioner unless, under reconstruction, the amount was sufficient to give it greater excess profits credits than allowed it under the income method. The credits allowed are based upon an ABPNI substantially equal to actual earnings during the last base period year. The proof made by petitioner fails to establish that the earnings on which the credits were allowed are an inadequate standard of normal earnings for the purposes of the excess profits tax.

Petitioner concedes liability for the additions for fraud except to the extent that they include amounts imposed on the excess profits tax deferred under section 710 (a) (5) for the years 1943 and 1944. It admits that pursuant to the provisions of section 293 (b) the addition applies to the entire deficiency if any part thereof is due to fraud with intent to evade tax and concedes that the deferred tax constitutes a deficiency. The contention is made, without more than a bare statement, that section 710 (a) (5) had the effect of modifying section 293 (b) so as not to embrace the tax deferred. We find no such modification.

The "total deficiency" for the imposition of an addition for fraud under section 293 (b) is the difference between the tax liability and the amount shown on the original return. *George M. Still, Inc.*, 19 T. C. 1072. That provision is made applicable to excess profits tax by section 729 (a). The purpose of section 710 (a) (5) is to defer imposition of a portion of the excess profits tax until a determination has been made under section 722. *California Vegetable Concentrates, Inc.*, 10 T. C. 1158; *Hardaway Motor Co.*, 18 T. C. 824. The amount so deferred may not be included in a deficiency prior to a determina-

tion under the application for relief under section 722, *California Vegetable Concentrates, Inc.*, *supra*, and upon rejection of the claim the amount deferred becomes a liability, which alone could constitute a deficiency, *Tribune Publishing Co.*, 17 T. C. 1228; or be part of a greater deficiency, as here. *Green Spring Dairy, Inc.*, 18 T. C. 929.

The deferred tax being an integral part of the deficiency determined for each of the years involved in the question, and since some part of the total deficiency is admittedly due to fraud with intent to evade tax, section 293 (b) requires that the addition be imposed on the entire deficiency.

Petitioner asserts upon brief that if section 710 (a) (5) does not modify section 293 (b) as contended by it, it would be denied due process of law in violation of the Fifth Amendment. That question was not raised by the pleadings and for that reason is not before us for consideration. *Frederick N. Dillon*, 20 B. T. A. 690; *Coca-Cola Bottling Co.*, 22 B. T. A. 686.

The addition imposed by section 291 (a), Internal Revenue Code of 1939, for failure to file a timely return is mandatory "unless such failure is due to reasonable cause and not due to willful neglect."

Reasonable cause has been construed to mean the exercise of ordinary business care and prudence. *Haywood Lumber & Mining Co.* v. *Commissioner*, 178 F. 2d 769; *Orient Investment & Finance Co.* v. *Commissioner*, 166 F. 2d 601; *Southeastern Finance Co.* v. *Commissioner*, 153 F. 2d 205; *In re Fisk's Estate*, 203 F. 2d 358. Reliance upon an attorney has been found in cases to constitute reasonable cause for failure to file a return within the prescribed statutory time. See *In re Fisk's Estate, supra*. Petitioner argues that it relied upon its attorney to file the return for 1945 within the statutory period, as extended, and therefore has established reasonable cause within the meaning of the statute.

The weight of the evidence here is that the attorney, whose integrity and truthfulness is admitted by petitioner to be unimpeachable, not only never requested that the returns be sent to him but he was not engaged to prepare or file the returns. The returns were not prepared for filing when they were sent to the attorney. This is shown by the fact that the returns were signed by petitioner's president and comptroller and the corporate seal affixed thereto on July 20, 1945, the date of filing. Whether the attorney was aware of the final date for timely filing of the returns is not shown. Petitioner's president and comptroller, who signed the returns, were aware of the final date for filing, and there was never any necessity for seeking advice of counsel about the matter.

There is no explanation in the evidence for the failure of the attorney to discover the returns in his office until his attention was called to

the matter, or of petitioner's failure to obtain possession of the returns from the attorney before the final date of filing. Absence of proof of the cause for the delay indicates that the officers of petitioner charged with the responsibility overlooked or forgot to file the returns in time. Neither of such reasons constitutes reasonable cause. *Gus V. Winston*, 22 B. T. A. 1194; *Rogers Hornsby*, 26 B. T. A. 591; *Plunkett v. Commissioner*, 118 F. 2d 644, affirming 41 B. T. A. 700.

There is some suggestion in the evidence that the failure was due to confusion existing from investigations being conducted in the office of petitioner and other abnormal conditions. The purpose of the provision for an addition to tax is to assure punctual compliance of the statutory requirement for timely filing of returns. *Spies* v. *United States*, 317 U. S. 492. The filing of returns on time was as important as other business matters. *Ned Wayburn*, 32 B. T. A. 813. The comptroller testified that he, as well as the president of petitioner and the attorney, was giving close attention to petitioner's tax liabilities. If so, he was negligent in not attending to the rendering of a timely return of petitioner's income tax liability for 1945.

We find no evidence to justify a finding that the untimely filing was due to "reasonable cause," and therefore we need not inquire whether the failure was not due to willful neglect. Accordingly, no reason appears for disturbing the respondent's imposition of the addition to tax.

Reviewed as to section 722 issue by the Special Division.

*Decision will be entered under Rule 50.*