CALIFORNIA VEGETABLE CONCENTRATES, INC., PETITIONER, *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 12544. Promulgated June 23, 1948.

*A. Calder Mackay, Esq., Arthur McGregor, Esq.,* and *Charles J. Higson, Esq.,* for the petitioner.
*R. E. Maiden, Esq.,* for the respondent.

## OPINION.

DISNEY, *Judge*: The disagreement of the parties on the salary question is whether the amounts paid to Sims and Pardieck constitute reasonable compensation for services actually rendered within the meaning of the applicable statute, section 23 (a) (1) (A) of the code. The issue is essentially a question of fact, controlled by the peculiar circumstances of record. No controversy is joined as to payment, or time of payment.

Each of the salaries in question consisted of a basic amount annually, $10,000 in the case of Sims and $7,800 in the case of Pardieck, plus a portion of the net profits, 35 per cent for Sims, and 25 per cent in 1942 and 30 per cent in 1943 for Pardieck. The contingent compensation in each instance was payable after setting aside an amount for dividends on preferred stock, and such compensation of Sims was deductible before computing like salary of Pardieck.

The Treasury regulations approve broadly the method employed by petitioner to fix the amount of the compensation in question. Section 19.23 (a)–6 (2) and (3) of Regulations 103 and 111, provides, as follows:

(2) The form or method of fixing compensation is not decisive as to deductability. While any form of contingent compensation invites scrutiny as a possible distribution of earnings of the enterprise, it does not follow that payments on a contingent basis are to be treated fundamentally on any basis different from that applying to compensation at a flat rate. Generally speaking, if contingent compensation is paid pursuant to a free bargain between the employer and the individual made before the services are rendered, not influenced by any consideration on the part of the employer other than that of securing on fair and advantageous terms the services of the individual, it should be allowed as a deduction even though in the actual working out of the contract it may prove to be greater than the amount which would ordinarily be paid.

(3) In any event the allowance for the compensation paid may not exceed what is reasonable under all the circumstances. It is in general just to assume that reasonable and true compensation is only such amount as would ordinarily be paid for like services by like enterprises under like circumstances. The circumstances to be taken into consideration are those existing at the date when the contract for services was made, not those existing at the date when the contract is questioned.

The salary of Sims, based in part upon profits, was fixed by the board of directors of petitioner in 1936 for a period of three years and in 1938 was continued for subsequent years until changed by proper action. In 1938, when the percentage of profits to be used in computing contingent compensation reached the maximum of 35 per cent, the figure applicable to all subsequent years, the salary of Sims was $16,485.41, or about $38,000 less than the amount respondent determined to be reasonable for each of the taxable years. The total salary of Sims in 1939 was about $22,500 and in 1940, $41,000. The salary of Pardieck, based in part upon profits, was not fixed until 1940, and it, as in the case of Sims, increased or decreased thereafter according to net profits. The arrangements disclose a fixed policy of petitioner to pay its key officers compensation based in part upon net profits. It has been held that such a policy "is based primarily upon sound business principles." *Gray & Co.* v. *United States*, 35 Fed. (2d) 968. In *Austin* v. *United States*, 28 Fed. (2d) 677, the court said that "The reasonableness of the contract is to be viewed in the light of the circumstances that existed when it was made," and "It is immaterial that in the actual working out of the contract contingent compensation may prove to be greater than the amount which ordinarily would be paid."

None of the salaries has any relation to stockholdings and neither officer at any time held a controlling interest in petitioner. It was not until 1943 that their combined stockholdings constituted a majority. Stoepel held about 28 per cent of petitioner's stock when the salaries were fixed by him and other directors, and never received a salary based upon earnings. The earned surplus of petitioner increased about $185,000 from 1936 to the close of 1943, after payment of all dividends on preferred stock and small dividends, total about $24,000, on common stock.

The facts clearly show that the success of petitioner was due primarily to the efforts of Sims, with the assistance rendered by Pardieck, in procuring desirable fresh vegetables, designing machinery, and operating the plant. Their joint efforts resulted in the creation of products which were acceptable to large processors of food at prices highly profitable to it. No other manufacturer was able to produce dehydrated tomato flakes containing the natural red color, and to that extent petitioner, on account of the ability of Sims and Pardieck, had a monopoly in the industry. The large profits in the taxable years were made possible to a large extent by the effort expended by Sims and Pardieck in prior and less profitable years.

Considering all of the facts of record, we conclude and hold that the salaries in question were reasonable, and they are deductible as compensation paid for personal services actually rendered.

Section 710 (a) (5) of the code provides that, under circumstances as to the applicability of which the parties are not in disagreement here, "the amount of tax payable at the time prescribed for payment may be reduced by an amount equal to 33 per cent of the amount of the reduction in the tax so claimed. * * *" Petitioner elected to accept the benefits of the provision and, following Form 1121 prescribed by the Treasury Department, each taxable year reduced the amount of excess profits tax shown in its returns by 33 per cent of the amount of its claims for relief under section 722. The respondent recognized the action by assessing only the tax liability so reduced by petitioner, as tax due, adjusted in 1942 for mathematical errors. The deficiencies determined by the respondent, however, do not reflect the reduction in "Tax payable at the time prescribed for payment," that is, they defer no part of the adjusted excess profits tax liability.

The position of petitioner is, in substance, that there should be no assessment of the amount of the reduction shown on its return until the Commissioner passes upon its claim for benefits under section 722. Respondent's position in that regard is that such deferment is precluded by the provisions of section 271 (a), defining "deficiency," and the concluding sentence of section 710 (a) (5) (immediately following the portion quoted above) which reads as follows: "* * * For the purposes of section 271, if the tax payable is the tax so reduced, the tax so reduced shall be considered the amount shown on the return." He says that, since he has issued a deficiency in this matter, section 272 (f) bars him from thereafter issuing another to cover the 33 per cent, if it is not included in the present deficiency, so that it is essential to the protection of the Government revenue that he include the deferred amounts in the deficiencies here involved. He adds that, in the matter of the collection of any deficiency found by this Court herein, it must be presumed that respondent will make the collection in accordance with petitioner's rights under the law, and that the petitioner's claim of deferment is prematurely made and improperly imposed upon this Court.

Section 271 defines the meaning of the term deficiency as used in chapter 1 of the code. It is made applicable to excess profits taxes provided for in subchapter E of chapter 2 of the code by section 729 (a), which reads as follows:

All provisions of law (including penalties) applicable in respect of the taxes imposed by Chapter 1, shall, insofar as not inconsistent with this subchapter, be applicable in respect of the tax imposed by this subchapter.

This provision requires that section 271 be read in connection with any inconsistent provisions of subchapter E of chapter 2.

Section 272 (b) provides that the Commissioner shall assess the entire amount determined as a deficiency by this Court, and that the

same shall be paid upon notice and demand from the collector. It is obvious, therefore, that if this Court approves the respondent's view and does not exclude the 33 per cent of the amount claimed under section 722 from the deficiency here being redetermined, the Commissioner may assess it and is, therefore, able to demand payment—and the taxpayer will have secured only temporarily the immunity from assessment, that is, deferment of the 33 per cent granted in section 710 (a) (5). It is our duty to determine the proper amount of deficiency, and therefore to decide whether the 33 per cent forms a part thereof.

Section 710 (a) (5), it seems to us, clearly provides deferment until the completion of the determination of the claim under section 722, for the deferment is provided only under certain circumstances for one who files a claim under section 722, and it seems apparent that the object in view was to recognize that such a taxpayer filing a claim for relief under section 722, where its adjusted excess profits net income was more than 50 per cent of its normal tax net income, should be considered sufficiently likely to prevail at least to some extent on its claim that it would be only fair to let such a taxpayer retain 33 per cent of the amount of such claim until final adjustment thereof. To permit the deferment only until the Commissioner can issue a deficiency notice (prior to section 722 procedure) and collect thereon is not in line with the obvious intent of the statute.

The respondent, however, taking the definition of deficiency under section 271 as (so far as here of interest) "the amount by which the tax imposed * * * exceeds the amount shown as the tax by the taxpayer upon his return" (quoting section 271 (a) as in the law applicable in 1942; and the effect of section 271 (a) as applicable in 1943 is the same though not in text), apparently feels that, since the latter part of section 710 (a) (5) provides that for the purposes of section 271 the tax payable as reduced shall be considered the amount shown on the return, therefore, unless he includes the 33 per cent in the present deficiency, he will eventually fail to collect that portion of "the tax imposed" represented by the 33 per cent of the amount of the section 722 claim because section 272 (f) forbids him to issue a second notice of deficiency. This is the crux of our problem. In our opinion, the respondent's fear is not well founded; for we do not think that the 33 per cent is a part of "the tax imposed" within the language of section 271 defining deficiency, but that the 33 per cent is not "imposed," if ever, until the determination, in the section 722 procedure, that there is liability therefor. Obviously, if the 33 per cent is not included in the tax imposed for purposes of the first deficiency, here being redetermined, it therefore does not enter into the amounts involved in section 271 and making up the deficiency, **and**

to that extent the Commissioner is not precluded later from issuing a deficiency. It is true that section 272 (f) provides that with certain exceptions not here pertinent a second notice of deficiency may not be mailed in respect of the same taxable year, but under section 729 (a) we must read section 272 (f), as well as section 271, as modified by the excess profits tax law, including 710 (a) (5) ; and, since in our view that section delays the imposition of the excess profits tax to the extent of the 33 per cent until the determination under section 722, the object of section 710 (a) (5) and consistency between the provisions of chapter 1 and subchapter E of the excess profits tax law is properly and fairly accomplished by the view here taken, without prejudice to the respondent's right eventually to collect the 33 per cent if it is then determined to be payable by the taxpayer. Moreover, section 732 (a) provides in express language that if a claim under section 722 is disallowed, in whole or in part, the Commissioner's notice of disallowance "shall be deemed to be a notice of deficiency for all purposes relating to the assessment and collection of taxes or the refund or credit of overpayments," if a petition is filed with this Court. Though textually the provision applies only if a petition is filed with this Court, we construe this to mean that this Court, when the matter comes before it, shall consider the notice of disallowance under section 722 as a notice of deficiency, but that this does not mean that, if an appeal is not taken to this Court, the disallowance may not be a determination of deficiency as between the Commissioner and the taxpayer. It is clearly a determination of the amount of tax liability of the taxpayer, for it either allows, or, in whole or in part, disallows the relief asked for under section 722, and, so far as the deferred 33 per cent is concerned, determines that there is, or is not, tax liability therefor. In our view, such is the first determination of the taxpayer's liability for the 33 per cent and is not precluded by the provision of section 272 (f), in chapter 1. To hold otherwise would be contrary to the expressed intent of Congress as shown by the report of the Committee on Finance with respect to section 710 (a) (5), reading, in part, as follows:

* * * Thus, at the time required for payment, an eligible taxpayer need pay only 67 per cent of that portion of the tax from which it claims relief. Any reduction in tax determined under section 722 in excess of the amount deferred by the taxpayer will have the effect of producing an overpayment of tax. Any determination of tax greater than the total amount paid will produce a deficiency.

Senate Report No. 1631, p. 205. The language of the report of the Committee on Ways and Means is the same. C. B. 1942-2, p. 481.

Moreover, the above conclusion that the tax imposed (and therefore the deficiency) does not include the 33 per cent reduction is recognized in the Treasury regulations.

Section 35.780–1 of Regulations 112, relating to post-war refunds of excess profits tax, provides, in part:

> * * * Pending the final determination of the tax pursuant to section 722, the tax imposed shall, for such purpose, be tentatively considered as an amount determined without regard to the determination under section 722, minus the amount, if any, by which the tax payable at the time prescribed for payment is reduced under section 710 (a) (5) (relating to deferment of payment of tax in case of claim under section 722). * * *

That, on the question of whether section 272 (f) precludes a second notice of deficiency, the excess profits tax law modifies that section, is clearly recognized in *Uni-Term Stevedoring Co.*, 3 T. C. 917, wherein, to the suggestion that "section 272 (f) prohibits the determination of an additional deficiency where a petition based upon an existing notice has been filed with this Court," we said:

> The flaw in this reasoning is that the provisions of the income tax law, including sections 322 and 272, are made applicable to the excess profits tax only to the extent that they are not inconsistent with the provisions of the excess profits tax subchapter. * * *

To the same effect was *Pohatcong Hosiery Mills*, 162 Fed. (2d) 146.

The language of section 292 (b) provides in substance that interest shall not be charged under certain circumstances on deficiencies arising from section 722 procedure. But, parenthetically, it specially excludes "any portion of a deficiency in excess profits taxes *constituting a deficiency* by reason of deferment of tax under section 710 (a) (5), and excluding, in case the taxpayer has availed itself of the benefits of section 710 (a) (5), such portion of a deficiency under Chapter 1 as may be determined * * * to exceed any refund or credit of excess profits tax arising from the operation of section 722." [Italics ours.] This language demonstrates completely that the deferment of tax under section 710 (a) (5) may result in a deficiency.

The excess profits tax return, Form 1121, prescribed by the Treasury Department, provides in line 17 for the reduction of the tax by the amount of deferment provided by section 710 (a) (5). It also provides computation of the debt retirement credit and the post-war refund on the basis of such reduced amount.

Section 722 (d) provides, in connection with relief under section 722, that the taxpayer shall compute its tax, file its return, and pay the tax shown thereon without application of section 722, "except as provided in section 710 (a) (5)." From all of the above, we conclude that Congress did not intend that the taxpayer should be liable for the 33 per cent until completion of section 722 procedure and as a part of the deficiency, if any, then determined.

We conclude and hold that the Commissioner erred in including

in each deficiency the amount of the reduction provided under section 710 (a) (5).[1]

The assessments made by the respondent on the basis of petitioner's returns take into account, as credits, amounts for post-war refunds of excess profits taxes and credit for debt retirements provided for in sections 780, 781, and 783 of the code. The assessments so made were deducted by the respondent in computing the deficiencies, resulting, petitioner argues, in no credit for the amounts taken in the returns, or for the additional tax imposed by the proposed deficiencies.

The respondent, on brief, admits that the deficiencies were determined without regard to post-war refund credits and asserts that the taxes have not been paid and that petitioner will receive in due course any credits to which it is entitled.

With respect, first, to the credit for debt retirement, section 783 provides for a credit against excess profits tax of an amount equal to 40 per cent of the amounts paid during the year in repayment of principal of indebtedness, with a limitation not necessary of consideration here. The proof before us contains no evidence of the debt retirement necessary, or the amount thereof. The petition does not allege error in disallowance of credit for debt retirement. No findings of fact as to debt retirement were requested. No error by the Commissioner is shown in this respect.

Next, as to post-war credits: The credit for post-war refund of excess profits tax provided by section 780 [2] is not a credit against tax

---

[1] House Joint Resolution 385, recently enacted, amends section 710 (a) (5) of the Internal Revenue Code, retroactively, so as to apply to the taxable years here involved. It provides in substance that notwithstanding any other provision of law, to the extent that any amount of tax remaining unpaid pursuant to section 710 (a) (5) is in excess of the reduction in tax finally determined under section 722, the excess may be assessed within one year from such final determination. In the light of such enactment, the respondent's fear, above referred to, that it was necessary for the protection of the public revenue to include the 33 per cent in the deficiency determined, is not well based. The resolution reads as follows:

"SEC. 3. EXTENSION OF TIME FOR ASSESSMENT OF DEFERRED EXCESS-PROFITS TAX.

"(a) Section 710 (a) (5) of the Internal Revenue Code is hereby amended by adding at the end thereof the following:

'Notwithstanding any other provision of law or rule of law, to the extent that any amount of tax remaining unpaid pursuant to this paragraph is in excess of the reduction in tax finally determined under section 722, such excess may be assessed at any time before the expiration of one year after such final determination.'

"(b) The amendment made by this section shall be effective as if made by section 222 (b) of the Revenue Act of 1942."

[2] SEC. 780. POST-WAR REFUND OF EXCESS PROFITS TAX.

(a) IN GENERAL.—The Secretary of the Treasury is authorized and directed to establish a credit to the account of each taxpayer subject to the tax imposed under this subchapter, for each taxable year ending after December 31, 1941 (except in the case of a taxable year beginning in 1941 and ending before July 1, 1942), and not beginning after December 31, 1943, of an amount equal to 10 per centum of the tax imposed under this subchapter for each such taxable year. * * *

(b) APPLICATION OF CREDIT TO PURCHASE OF BONDS.—Within three months after the payment of the amount of the excess profits tax shown on the return for a taxable year

imposed, so as to reduce tax liability. It is a credit to the account of a taxpayer for which bonds or cash may be issued, depending upon when the tax is paid. Sec. 780 and 781. The amounts thereof, if any are allowable, form no part of the computation of a deficiency. It is clear that the credits to which a taxpayer may be entitled are matters outside the jurisdiction of this Court. Moreover, a credit for a post-war refund must be reduced by the amount of credit allowed for debt retirement. Sec. 783 (c).[3] There being, as above seen, no proof here of the amount of debt retirement to which petitioner might be entitled, if we had jurisdiction of the matter we would not, without the essential facts as to the amount of debt retirement, be in a position to allow any amount as a post-war refund credit.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

to which subsection (a) applies (or, if such taxable year begins or ends in 1942, within one year after payment of the excess profits tax shown on the return for such year), if the payment is made before July 1, 1945, there shall be issued to and in the name of the taxpayer bonds of the United States in an aggregate amount equal to 10 per centum of the tax paid in respect of which a credit is provided under subsection (a), and the credit established under subsection (a) for such taxable year is hereby made available for the purchase of such bonds.

[3] SEC. 783. CREDIT FOR DEBT RETIREMENT.

(c) REDUCTION OF CREDIT AND OF BONDS OUTSTANDING UNDER SECTION 780.—If a credit is allowed for debt repayment in a taxable year pursuant to this section, the amount of such credit or refund shall be deducted from the credit under section 780 (a) and the amount of bonds issued under section 780 shall, to the extent necessary, be correspondingly adjusted.