Journal-Tribune Publishing Company v. Commissioner.
Journal-Tribune Publ. Co. v. Commissioner
Docket No. 32844.
United States Tax Court
1956 Tax Ct. Memo LEXIS 131; 15 T.C.M. (CCH) 865; July 9, 1956
*131 1. Held, that "overpayment" is the excess of the amount of tax shown by the taxpayer on its return and paid, plus any deficiency determined and thereafter paid, over the amount of the taxpayer's correct tax liability, without reduction in either amount for the postwar refund credit. Sections 780 and 781, I.R.C., 1939. 2. Held, that section 784(a), I.R.C., 1939 is not here applicable in determining the tax imposed under section 710(a) (6) (B), for petitioner's fiscal year 1944, beginning prior to January 1, 1944. 3. Held, that for the purpose of computation of overpayment in respect of taxpayer's fiscal year 1944, ending on October 31, 1944, and offset against tax in the amount of the postwar refund credit to be refunded to the taxpayer in cash (section 781(c), I.R.C., 1939; H. Rep. No. 849, 79th Cong., 1st Sess. (1945)) constituted a payment of tax by the taxpayer. John Enrietto, Esq., and K. Martin Worthy, Esq., for the petitioner. Harold Weinstock, Esq., for the respondent. FISHER
Memorandum As Basis of Rule 50 Decision FISHER, Judge: Findings of Fact and Opinion were filed in this proceeding on September 23, 1955, (24 T.C. 1048) determining constructive average base period net *132 incomes in specified amounts for the years involved and providing for entry of decision under Rule 50. Respondent submitted his computation for entry of decision on February 29, 1956, and petitioner filed its objections thereto on March 15, 1956, simultaneously submitting an alternative computation. A hearing was held in Washington, D.C., on March 21, 1956. [Findings of Fact] Respondent's recomputation for entry of decision is as follows: Excess Profits Tax Liabilities
Overpayment
Before Postwar
Taxable
Refund Credit
Year
Overassessment
Adjustment
10/31/43
$124,471.53
$124,471.53
10/31/44
112,795.73
87,252.36
10/31/45
93,959.19
93,959.19 Petitioner has not objected to entry of decision in accordance therewith regarding its fiscal year ended October 31, 1945. Petitioner objects only to such computation in respect of the fiscal years 1943 and 1944, contending that we should properly enter decision of overpayments for petitioner's fiscal year 1943 in the amount of $112,024.38 and in the amount of $101,516.16 for petitioner's fiscal year 1944. Fiscal 1943 While there is no significant dispute between the parties as to the cash amount that will ultimately be refunded to the petitioner in respect of fiscal *133 year 1943, the precise amount to be entered in our decision as an overpayment for such year is, nevertheless, in issue and must be entered in a manner consistent with our determination for fiscal year 1944 (with respect to which the real issue between the parties emerges). Moreover, petitioner projects the same views with respect to 1944 as for 1943. We think our position will be clearer if we discuss the issue in the factual context of fiscal year 1943. Respondent has computed the $124,471.53 figure for 1943 by subtracting $52,417.52, representing petitioner's excess profits tax liability, as recomputed in accordance with our Opinion, from $176,889.05, the amount shown on the return to be due for such year, which amount was paid by petitioner. Petitioner, on the other hand, arrives at the figure of $112,024.38 for 1943 by reducing the aforementioned amount of $176,889.05 by 10 per cent, representing the postwar credit (see section 780) and likewise by reducing the aforementioned amount of $52,417.52 by 10 per cent, representing the postwar refund credit (see section 781) before subtracting the resultant figures ($47,175.77 from $159,200.15) to arrive at an overpayment of $112,024.38. *134 The following is petitioner's computation. Excess profits tax paid on original return (per Respond-
ent's Computation and Joint Exhibits 2-B, 6-F)
$177,220.19
Less: Credits to 1942 tax and 1943 income tax - Dec. 20,
1945 (per Respondent's Computation and Joint Exhibits
2-B, 6-F)
331.14
Less: Postwar credit previously refunded
17,688.90
Net excess profits tax payments at date of filing petition
on Feb. 28, 1951 herein
$159,200.15
Excess profits tax liability (per Respondent's Computa-
tion)
$ 52,417.52
Less: Postwar refund credit - 10%
5,241.75
Net excess profits tax liability at date of filing petition
on Feb. 28, 1951
47,175.77
Overpayment of excess profits tax after all adjustments
for postwar refund credit
$112,024.38
The issue simply stated is whether the amount of overpayment to be found and determined by the Court is computed with or without adjustment for the postwar refund credits authorized in sections 780 and 781 of the Internal Revenue Code of 1939. [Opinion] The substance of petitioner's argument is that the "overpayment" is precisely that sum which is finally to be either "credited" or "refunded" by the Government to the petitioner. [1] Petitioner contends that our decision "should take into *135 account all refunds from or credits out of the prior payments received and * * * all additional collections for or credits to the particular tax liability involved." Respondent, however, argues that the items which enter into the computation of the "overpayment" are the correct tax liability and the amounts of tax payments, both unadjusted for the postwar refund credits. We agree with the respondent. "Overpayment" is not defined anywhere in the Internal Revenue Code. The Court is authorized to find and determine the amount of an overpayment, however, and the amount thereof is to be credited or refunded to the taxpayer when our decision has become final. Section 322(d), Internal Revenue Code 1939. (See section 6512(b), Internal Revenue Code , 1954.) In case of an overpayment such amount "shall be credited against any income, war-profits, or excess-profits tax or installment thereof then due from the taxpayer, and any balance shall be refunded immediately to the taxpayer. [Section 322(a)(1), I.R.C., 1939. (See section 6402(a), I.R.C. 1954)]." The *136 terms used in the excess profits tax subchapter have the same meaning as in these provisions. Section 728. The postwar refund here in question is authorized under section 780 for taxable years ending after December 31, 1941, and not beginning after December 31, 1943. The refund authorized is in form a credit to the account of the taxpayer, equal in amount to 10 per cent of the tax imposed for the taxable year. Within a specified time after payment of the tax shown on the taxpayer's return, if such payment is made before July 1, 1945, bonds are issued to the taxpayer in an amount equal to 10 per cent of the tax paid in respect of which the aforementioned credit is provided. The bonds bear no interest. Section 781 further provides that in case of a deficiency in excess profits tax - representing the difference between the tax shown on the return and the taxpayer's correct tax liability (tax imposed) - in any year for which the credit is provided, which is also paid before July 1, 1945, additional bonds shall be issued in an amount equal to 10 per cent thereof (in respect of which the credit is provided under section 780). Section 781(b) provides that in case of an overpayment of the *137 tax imposed, for any year for which the credit is provided, the credit to the account of the taxpayer then existing shall be reduced by an amount equal to 10 per cent of "the excess of the tax imposed by [the] subchapter on the basis of which such tax * * * was previously computed and paid, over the tax imposed by [the] subchapter as determined in connection with the determination of the amount of the overpayment." Section 781 (b) further provides as follows: "In such a case, if such credit provided in section 780(a) for such taxable year is less than the amount by which it is required to be reduced, or if there is no such credit then existing in favor of the taxpayer, the excess of such amount over the amount of such credit, if any, shall constitute a charge against the taxpayer to be applied in reduction of the amount of the bonds previously issued to the taxpayer under section 780(b) with respect to such taxable year. If the bonds issued with respect to such taxable year are not made available for the purpose of such reduction or the amount of such bonds so made available is less than the amount of such charge, such charge or the excess of such charge over the amount of such bonds *138 so made available, as the case may be, shall be applied at the time of the credit or refund (or as of January 1, 1946, if that time is earlier) in reduction of the amount of the credit or refund of the overpayment of the tax." [Italics supplied] All payments of tax by petitioner in respect of its liability for the fiscal year 1943 were made prior to July 1, 1945. We think it is clear from our description of these several sections that "overpayment" must be taken to refer to the excess of the amount of tax shown by the taxpayer on its return and paid, plus any deficiency determined and thereafter paid, over the correct amount of tax for which the taxpayer is actually liable (that is, the tax imposed) after recomputation based on application of section 722. In the instant case the petitioner made payments of tax in a total amount of $176,889.05, as follows: January 14, 1944
$44,305.05
April 13, 1944
44,305.05
July 17, 1944
44,305.05
October 6, 1944
44,305.04
Credit to 1942 and 1943 taxes
[2] *139 (331.14) And petitioner's correct total liability in accordance with our previous Opinion is $52,417.52. The difference of $124,471.53 represents an overpayment of tax, as urged by respondent. No other view is consonant with the terms of the statute. The provisions of sections 780 and 781 could not be effected if the postwar refund, or reduction thereof in case of overpayment, were considered in the computation of an overpayment. The terms "credit" and "refund" are different from and not comprised in the term "overpayment." And credits and refunds are without the scope of overpayment and do not enter into the computation thereof. The statutory scheme calls for the establishment of a credit to the taxpayer's account in the amount of 10 per cent of the tax imposed under the statute. The credit so *140 established is then used for the purchase of a special series of bonds constituting a refund of tax (see United States v. Arthur G. McKee & Co. (U.S.D.C., Ohio, March 22, 1956) 139 Fed. Supp. 263. The portion of the credit authorized to be so used is calculated on the basis of the tax shown on the return and paid by the taxpayer. (The same procedure is followed in respect of any deficiency in tax which is paid.) The postwar credit refund, therefore, is not merely an administrative bookkeeping adjustment or reduction 9e tax liability. California Vegetable Concentrates, Inc., 10 T.C. 1158 (1948) [Dec. 16,462]. See also, United States v. Arthur G. McKee & Co., supra. The tax imposed must be paid in order to give rise to the postwar credit refund, which, in turn, is made in special form. Such refund is made in bonds evidencing an indebtedness. The Government thus has the temporary use of the taxpayer's money to the extent of the value of the bonds until returned to the taxpayer upon redemption of the bonds, without payment of interest. The ultimate effect of such compulsory lending, Paul, Taxation in the United States, p. 321 (1954), upon redemption of the bonds, is to reduce the *141 taxpayer's effective tax liability, but such is not the effect at the time of original payment. Understanding this, it becomes clear what procedure is to be followed in the instant case under the provisions of section 781. There clearly being an overpayment in some amount in the instant case, the credit to the account of the taxpayer is to be reduced by an amount equal to 10 per cent of such overpayment - "the excess of the tax imposed by this subchapter on the basis of which such tax (in respect of which the internal revenue refund or credit is made) was previously computed and paid, over the tax imposed by this subchapter as determined in connection with the determination of the amount of the overpayment." This reduction can only occur if the overpayment, upon which the amount of such reduction in credit is here to be calculated, is not first reduced by the credit previously established on the basis of the tax imposed. "Over-payment" as contemplated by this section necessarily then is, in the circumstances of this case, the result of the excess of tax paid over the correct tax liability without reduction of either figure for the postwar refund credit. (It should be understood that *142 we have merely outlined the procedure provided for in section 781 for the purpose of deciding what is "overpayment" and that we have no function in carrying out, or administering, the procedure there called for in case of overpayment.) If there is no outstanding credit which may be reduced in the manner heretofore indicated, the reduction authorized in case of overpayment is to be made in the amount of the bonds previously issued, or if such bonds are not available to be so reduced in amount, or if the outstanding bonds are less in amount than the amount to be charged against them, the charge is to be applied at the time of the credit or refund "in reduction of the amount of the credit or refund of the overpayment of the tax." Such likewise is manifestly an administrative matter over which we have no control and with which we are not concerned. Section 322 provides that the credit or refund of overpayment as determined by us is to be made after our decision has become final. Thus the charge (reduction in credit) to be made, in such circumstances as outlined above, is to be made after our decision has become final and goes to reduce the overpayment that we have determined and which *143 is to be credited or refunded administratively at such time. See H. Rep. No. 849, 79th Cong., 1st Sess. (1945 C.B. p. 572). [3] Clearly then the overpayment to be determined does not necessarily represent the actual dollars to be credited or refunded as contended by petitioner, and section 322(d) is not contrary when it is read (as it must be) in conjunction with sections 780 and 781. Petitioner's view would render meaningless this entire complex procedure outlined in section 781(b). Petitioner argues that if the amount of tax paid as shown on the return *144 (plus any deficiency paid), less the postwar refund credit, exceeds the ultimate correct tax liability, less the adjustment in postwar credit based thereon, there would result an overpayment exactly equal to such excess. In such a view there would not be any need for the provisions of section 781 (b), particularly that requiring reduction of the overpayment at the time of credit or refund thereof, which takes place after our decision entering an overpayment has become final, since such reduction would have already been reflected in our determination of overpayment, as calculated by petitioner. We cannot so read section 781 (b) out of the statute. We find some support for our view in California Vegetable Concentrates, Inc., supra, and Estate of Esther M. Stein, 25 T.C. 940 (1956). In California Vegetable we held that the postwar refund credit is not to be taken into account in computing the amount of a deficiency. We stated (pp. 1171, 1172): "The credit for post-war refund of excess profits tax provided by section 780 is not a credit against tax imposed, so as to reduce tax liability. It is a credit to the account of a taxpayer for which bonds or cash may be issued, depending upon *145 when the tax is paid. Sec. 780 and 781. The amounts thereof, if any are allowable, form no part of the computation of a deficiency. It is clear that the credits to which a taxpayer may be entitled are matters outside the jurisdiction of this Court. * * *" While "deficiency" is defined in the statute (section 271) as an amount equal to the excess of the tax imposed under the statute and the amount of tax as shown by the taxpayer on its return, and "overpayment" is not, the principle that the tax imposed may not be reduced by the postwar credit in the computation of a deficiency is equally applicable to the case at hand. We think that the tax imposed by the statute and upon which basis the credit is calculated likewise cannot be reduced by the credit in the computation of an overpayment. For our purposes Esther Stein is to the same effect as California Vegetable and further supports our view. Ernest J. Keefe, 15 T.C. 947 (1950), cited by petitioner, involves quite a different problem and is not in conflict with our holding here. There we indicated that estimated tax payments do not enter into the computation of a deficiency but are reflected in computing an overpayment. Petitioner *146 also cites Altschul's, Inc., 9 T.C. 697 (1947), but the problem there before us concerned only whether the postwar credit has to be accrued on the taxpayer's own books at the same time the tax liability upon which it was based is accrued. Our holding to the effect that both items are simultaneously accrued was not to the effect that the credit constituted a reduction in tax liability and has no significant bearing on the problem here. Petitioner further argues as follows: "The issuance of Treasury bonds in the amount of $17,722.02, later adjusted to $17,688.91, under Section 780(a)[4] * * * is just as much a refund or credit to be deducted from the tax payments received in installments in 1944 as was the overassessment of $331.14, which was credited to other tax liabilities and which respondent accepts as a reduction of the payments to be taken into account. * * *" There is no merit in such point of view since the nature of the credits are completely different. The $331.44 amount was originally a cash payment of tax for the current year, determined upon audit to be an overpayment based on an overassessment in such amount. Such amount was administratively "repaid" to the petitioner *147 by way of credit as "payment" on other of its tax liabilities, and administrative reduction in postwar credit (section 781(b)) based on such overpayment was also made. It is clear, therefore, that nothing remains of such amount in terms of our consideration of overpayment for fiscal 1943. The $331.14 reduction in tax liability was because of overassessment and overpayment in that amount, and was not attributable to postwar refund credit. Our discussion heretofore indicates that what transpired administratively in respect of the $331.14 is like that which under the statute will take place administratively as a consequence of and on the basis of our determination here of overpayment, a determination which in respect of the $331.14 was made by the Commissioner upon audit. Applicability of Section 784(a) to Fiscal 1944 We come then to consider the question of overpayment for petitioner's fiscal year 1944. Respondent has computed the amount of overpayment as $87,252.36, by subtracting petitioner's recomputed excess profits tax liability of $142,638.01 from total payments of tax which respondent claims were limited to the sum of $229,890.37. We think the technique and *148 manner of such computation (but not the figure of $229,890.37 which respondent asserts to be the total payments of tax) is in accordance with our holding hereinbefore that an overpayment is properly computed by subtracting the taxpayer's correct tax liability from the total payments made, without reducing either figure by 10 per cent for the postwar refund credit. Petitioner's proposed method of computation for its fiscal year 1944, therefore, need not be discussed further in this respect. Petitioner, however, makes two further arguments which bear on the correctness of the amount of overpayment for entry of decision. Petitioner contends that the c6rrect amount of the overpayment to be entered by us is $101,516.16. The dispute between the parties really concerns the amount upon which the petitioner will be entitled to have interest computed. Respondent calculates the overpayment as $87,252.36 upon which amount interest will be paid, and indicates that an additional administrative refund probably in the amount of $14,263.80, will be due petitioner, but that interest will not be payable on such amount. See sections 3771(a) and 780(c); Regulations 112, section 35-781-1(a). Petitioner *149 claims that it is entitled not only to receive ultimately $101,516.16, ($87,252.36 plus $14,263.80) but that it is also entitled to receive interest on such amount and not merely on $87,252.36 as respondent asserts. We would emphasize at the outset that it is not within our jurisdiction to consider questions concerning the amount of interest to which a party may be entitled on the basis of our determination of overpayment. Our function extends only to determining the amount of such overpayment, and in our view of the case we cannot agree with either party as to the amount to be entered in our decision as overpayment. Our reasons are set forth hereinafter under the heading "Offset Against Tax as Part of Overpayment for Fiscal 1944." Petitioner contends that in applying 710(a)(6)(B) for fiscal 1944 (beginning on November 1, 1943, and ending on October 31, 1944) the computation of overpayment must give effect, in respect of the calendar 1944 portion of petitioner's fiscal year 1944, to the provisions of section 784(a) so as to reduce petitioner's tax liability (entering into such computation) by the allowance there provided for. In essence, petitioner is contending that the credit mechanism *150 of 780 and 781, heretofore the subject of our discussion, is not applicable to said calendar 1944 portion of its 1944 fiscal year. If petitioner is correct in its contention respondent's computation would be in error, since respondent contends that section 784 (a) is not here applicable and his computation is based on the theory that there can be no reduction in tax imposed (tax liability) by the postwar credit, as we have heretofore held. And the view which we take infra of the correct amount of over-payment in petitioner's fiscal year 1944, while favorable to petitioner, would be modified, since it is likewise based on our holding hereinbefore that the tax imposed is not so reduced by the postwar credit for the purpose of computing the overpayment, and gives no effect to 784(a). The question then at this point is whether section 784(a) is applicable to petitioner's fiscal year 1944. [5] *151 We hold that it is not, for the following reasons. Section 710(a)(6) provides for the imposition of tax in respect of taxable years beginning in 1943 and ending in 1944 and is here applicable. The section, in pertinent part, reads as follows: "(6) Taxable years beginning in 1943 and ending in 1944. - In the case of a taxable year beginning in 1943 and ending in 1944, the tax shall be an amount equal to the sum of - "(A) that portion of a tentative tax, computed as if the law applicable to taxable years beginning on January 1, 1943, were applicable to such taxable year, which the number of days in such taxable year prior to January 1, 1944, bears to the total number of days in such taxable year plus "(B) that portion of a tentative tax, computed as if the law applicable to taxable years beginning on January 1, 1944, were applicable to such taxable year, which the number of days in such taxable year after December 31, 1943, bears to the total number of days in such taxable year." A corollary to such special imposition of tax is the *152 limitation provision of section 781(d)(3) restricting the section 780(a) credit in respect of such fiscal years beginning in 1943 and ending in 1944, as follows: "(3) Special rule in case of certain fiscal years beginning in 1943. - In the case of a taxable year beginning in 1943 and ending in 1944, the credit under section 780(a) for such taxable year shall not be greater than the excess of the tax paid under this subchapter to the United States for such taxable year (and not credited or refunded under the internal revenue laws) over the amount which would be payable to the United States if - "(A) in the computation under section 710(a)(6)(A) the excess profits tax rate were 81 per centum, or, in case the limitation of section 710(a)(1)(B) is applicable in such computation, if the amount determined under such section 710(a)(1)(B) were reduced by 10 per centum, and "(B) in the computation under section 710(a)(6)(B) the excess profits tax rate were 85 1/2 per centum, or, in case the limitation of section 710(a)(1)(B) is applicable in such computation, if the amount determined under such section 710(a)(1)(B) were reduced by 10 per centum." Section 784(a) provides: "(a) Allowance. - Against *153 the tax imposed by this subchapter for any taxable year beginning after December 31, 1943, there shall be allowed as a credit an amount equal to 10 per centum of such tax." Petitioner contends that in calculating the portion of tentative tax computed "as if the law applicable to taxable years beginning on January 1, 1944, were applicable" here, in accordance with 710(a)(6)(B), for the part of petitioner's fiscal year 1944 falling within calendar 1944, the allowance under section 784(a) should be taken into account. This view is based on a rather involved argument which need not be set out here, since we think the view untenable in the light of the very specific language of the statute. Section 784(a) by its own plain terms is not made applicable to any taxable years other than those beginning after December 31, 1943. Petitioner's taxable (fiscal) year 1944 began prior to such date. Section 784(a) is a credit provision and we think it must be read in conjunction with the other than extant credit provisions. When such is done it is apparent that Congress contemplated application of different techniques for different years, doubtless dictated by the different economic circumstances *154 thought to be applicable at various times. Paul, Taxation in the United States, supra, p. 403. Section 780 (and consequently section 781, application of which depends on the applicability of 780) sets forth the method by which a credit is to be administered for all taxable years ending after December 31, 1941, and beginning not after December 31, 1943. For all taxable years beginning after this latter date section 784(a) provides for the proper credit technique. The special problems encountered for fiscal years beginning in 1943 and ending in 1944 are adequately taken care of by the limitation provided for in 781(d). There does not appear to have been any Congressional intent to consider these matters differently and we do not think that section 710(a)(6) evidences such an intent. That section is one imposing the tax and contains no reference to any of the separate credit sections. We have already determined in dealing with petitioner's fiscal year 1943 that the credit has no effect on the tax imposed under the chapter for the purpose of computing an overpayment, and we think such is likewise true here. The tentative tax imposed under 710(a)(6)(B) by reference to the law applicable *155 to years beginning in 1944 is computed under such law without reference to and without reduction for the special credit provided in 784(a). This is clear from the terms of 784(a) itself where the allowance provided therein is against the tax imposed under the subchapter for any taxable year beginning after December 31, 1943. The allowance thereunder clearly does not enter into the computation of the tax imposed for such taxable years and it is the tax so imposed only that is the proper consideration under 710(a)(6)(B). The legislative history of these various provisions also supports our view. Section 784 came into the law in the Tax Adjustment Act of 1945. Sections 780 and 781 were not then removed from the statute but to the contrary were specifically indicated by the House to continue in effect as amended. Specifically, section 780(a) was effective for taxable years ending after December 31, 1941, and beginning on or before December 31, 1943. The House Committee Report (H. Rep. No. 849, supra) states: "Thus * * * no postwar credit will be allowable for a taxable year beginning after December 31, 1943" - clearly implying thereby that such credit is applicable for such prior years *156 as heretofore indicated. After indicating that section 781(d)(1), relating to the limitation on the postwar credit for taxable years beginning after December 31, 1943, was no longer applicable the Committee Report states: "The applicable limitations on the post-war credit for taxable years for which such credit is provided under section 780(a) of the code, as so amended, are prescribed by section 781(d) of the code, as added by section 250 of the Revenue Act of 1942, and by section 781(d)(2) and (3), as added by section 250(f) of the Revenue Act of 1943." We think such clearly indicates that for fiscal years beginning in 1943 and ending in 1944, section 781(d)(3) remained in effect. On principle it is not difficult to understand the necessity of applying a single credit mechanism for a given taxable year, and such is the effect of our holding. Petitioner would have one mechanism operate for the 1944 part of petitioner's fiscal year and another for the 1943 part, whereas the Code clearly contemplates that only the mechanism of 780 and 781 be applied for all such taxable years beginning in 1943 and ending in 1944. Offset Against Tax as Part of Overpayment for Fiscal 1944 The last question *157 concerns what constitutes a tax payment for the purpose of computing an overpayment in the circumstances of the instant case. Petitioner's tax liability before application of section 722 was $255,433.74. Respondent required cash payments of only $229,890.37 and based his computation of overpayment on such amount. Petitioner contends that the difference of $25,543.37, which was allowed by the Commissioner as an offset against tax imposed in accordance with section 781(e) and the procedure outlined in H. Rep. No. 849, supra, should be treated as additional payments of tax. Section 781(c) provides: "Tax Payments After Cut-Off Date. - In the case of a payment of the tax imposed by this subchapter shown on the return for any taxable year for which a credit is provided in section 780(a), or the payment of a deficiency in respect of such tax for any such taxable year, on or after July 1, 1945, the amount of the credit under section 780(a) for such taxable year attributable to such payment shall be paid the taxpayer in cash. * * * If after January 1, 1946, there is any credit under section 780(a) remaining in favor of the taxpayer attributable to any taxable year for which a credit is provided *158 in section 780(a), such remainder shall be paid to the taxpayer in cash." And the pertinent portion of H. Rep. No. 849 is as follows: "In lieu of those provisions, the amendment provides that, in case of a payment of the excess profits tax shown on the return for any taxable year for which a postwar credit is provided, or the payment of a deficiency in respect of such tax for any such taxable year, on or after July 1, 1945, the amount of the postwar credit attributable to such payment shall be paid to the taxpayer in cash. The Commissioner of Internal Revenue may, if he deems it advisable, permit the taxpayer to offset against the payment of tax or deficiency the postwar credit attributable to such payment in lieu of requiring full payment of the tax or deficiency and returning the amount of the postwar credit attributable to such payment to the taxpayer in cash." In accordance with the recommendation of the House Committee the amount in question was not required to be paid but was allowed as an offset in lieu of payment against the petitioner's liability (tax imposed) in the amount of $255,433.74. Petitioner urges that such offset was a payment of tax and enters into the computation *159 of the overpayment here in issue. [6] Respondent, on the other hand, urges that such amount did not ever constitute a payment but was rather in the nature of an abatement or forgiveness in such amount and does not enter into the computation of the overpayment. We hold for the petitioner. We have already decided that the tax imposed is not reduced by the credit and such is the rule whether the credit is a simultaneous cash payment or is *160 represented by bonds. But instead of requiring payments to fully satisfy such liability and then on the basis thereof return immediately a certain amount of cash, the liability was satisfied by payments in the amount of $229,890.37 plus an offset equivalent to the amount to be returned to petitioner in cash. That the offset was intended to be considered as a payment of tax is clear from the Committee report wherein the Commissioner derived his authority for such offset procedure. The report carefully states that the offset is "against the payment of tax" and that what is being so offset is "the postwar credit attributable to such payment in lieu of requiring full payment * * * and returning the amount of the postwar credit attributable to such payment to the taxpayer in cash." The credit clearly stands in place of payment to the extent thereof. It would be anomalous if taxpayers, who with one hand paid the full tax imposed and then immediately received back in the other hand cash for the credit based on such tax imposed, were treated differently than those who with the Commissioner's blessing and at his direction "short circuited" such procedure by means of an offset. Yet such would *161 be the result of respondent's view here, since it could not be denied that the first taxpayer made full payment of the tax imposed, and since we have already held, in accordance with respondent's view, that the tax imposed (tax liability on which payment is being made) may not be reduced by the postwar refund credit whether such takes the form of bonds or cash. In essence, what has occurred in both instances, though by different exchanges, in accordance with the intent and purpose of section 781(c), is that the taxpayer has been, in effect, permitted to utilize the proceeds from the postwar credit to satisfy a part of his tax liability (which is never reduced by such credit). Thus the taxpayer, without reduction in its tax liability, is placed in a better cash position to meet the needs of business thought to exist at the time of enactment of 781(c). This point of view and purpose is clearly expressed in the House Committee Report (cited supra) where it states: "An important purpose of this bill is to improve the cash position of business by advancing the time of payment of postwar tax refunds and credits provided under existing law. This will reduce the danger that reconversion might *162 be impeded by shortages of cash." The statement in California Vegetables, supra, that "The credit for post-war refund of excess profits tax provided by section 780 is not a credit against tax imposed, so as to reduce tax liability. It is a credit to the account of a taxpayer for which bonds or cash may be issued, depending upon when the tax is paid. * * *" is not inconsistent with our view. The tax imposed has not been reduced by the cash payment of the credit, but in effect, has in turn been satisfied in part (by way of offset) by the cash so paid to the taxpayer for the credit. Respondent indicates that he considers the amount of $14,263.80 (the difference between $101,516.16 and $87,252.36) as a post-war refund credit item rather than an overpayment of tax. Here, we think, lies the crux of the issue. In reality the postwar refund credit item ($25,543.37 representing 10 per cent of the tax imposed as shown on the return in the amount of $255,433.74 [7]) was exhausted by the petitioner (in the amount of $25,543.37) by reason of the offset, based thereon, allowed against tax instead of immediate repayment of such amount to petitioner simultaneously with payment by it of the full $255,433.74, *163 and there can be none left to refund to the taxpayer. Under the scheme of section 781, outlined supra, the credit of $25,543.37 allowed on the basis of a tax shown to be $255,433.74 has now to be reduced by $11,279.57 so that it does not exceed 10 per cent of petitioner's correct tax liability determined to be $142,638.01. The petitioner's tax liability as originally shown, prior to application of 722, was $255,433.74. Under 780(a) a credit to its account in the amount of $25,543.37 was to be established on the basis thereof. Payment of the $255,433.74 would, if made after July 1, 1945, give rise to an immediate right to a cash refund. If payments were made before that date but the portion of the credit attributable thereto which might have been used to purchase bonds had not been so used by January 1, 1946, or if on that date any portion of the credit remained, regardless of whether or not payment was made on the tax, the Government was obliged to refund in cash the amount of such remaining credit. In lieu thereof, which at least by January 1, 1946, would have had the effect of wiping out completely any credit to the taxpayer's account for fiscal 1944, the Commissioner, in accordance *164 with the House Report recommending such procedure, allowed an offset against the tax liability in the amount of the full credit established in favor of petitioner and for which petitioner would in any case have been entitled to receive a cash payment. It is apparent, therefore, that in reality the taxpayer has already received the full postwar refund credit to which it could conceivably be entitled, and in fact has received more than it is properly so entitled to, now that its tax liability has been redetermined by application of 722. Thus, the $14,263.80 difference between petitioner's and respondent's overpayment figures, which amount respondent says will be paid over to petitioner administratively, clearly cannot be attributable to, represent, or be a postwar refund credit as respondent suggests. It is likewise clear that if the $14,263.80 were a postwar refund credit item, a finding of overpayment in the amount of $87,252.36, as urged by respondent, would not *165 leave room for proper administrative operation of 781(b) as we have heretofore outlined in sustaining respondent's view in respect of fiscal 1943. That section requires that in case of an overpayment (and there is obviously some overpayment in the instant case) the credit to the account of the taxpayer is to be reduced proportionately, in effect, so as not to reflect a credit any greater than 10 per cent of the recomputed tax liability. And if there is no credit outstanding - such being true of the instant case - then the amount of bonds outstanding is to be reduced. But if there are no bonds outstanding attributable to such year in which the overpayment is found (as is the case here since the credit was allowed as an offset, section 781(c)) then the charge (reduction in credit) goes to reduce the amount to be refunded or credited, attributable to the overpayment, at the time of refund or credit thereof. If the overpayment is $87,252.36 as urged by respondent, and if the credit has been exhausted and no bonds are outstanding, which appears to be the case, then the required reduction in previously allowed credit so as not to exceed $14,263.80 (10 per cent of the recomputed tax liability) *166 must be made in the overpayment of $87,252.36, in effect reducing the amount of dollars to which the petitioner will ultimately be entitled. Likewise, the overpayment in the amount urged by petitioner precludes proper application of these procedures, since the amount to ultimately be refunded after adjustment for the reduction in credit would be an amount less than the $101,516.16, which amount both parties seem to agree is ultimately to be refunded (not including interest). The true figure to give effect to 781(b) must be $112,795.73 which is the result of subtracting the recomputed tax liability of $142,638.01, as unreduced by the postwar refund credit, from $255,433.74 considered as total payments, as we have heretofore held on another basis, and likewise unreduced by the postwar credit. Then the required adjustment for reduction in credit under section 781(b) in the amount of $11,279.57 can be effected, after entry of our decision and on the basis of the overpayment we find, as required by that section. To accomplish the directives of 781(b) in the circumstances of the instant case and to abide by the rule that the tax imposed may not be reduced by the postwar refund credit, it *167 is clear that the total tax payments must be considered as $255,433.74 as urged by petitioner and not $229,890.37, as urged by respondent. Such accords with the view that there is no postwar credit item involved in any part of the $101,516.16 ultimately to be returned to the taxpayer. The Government has actually received $101,516.16 tax dollars (not including any subject to credit) more than the final (actual) tax dollars, after reduction in credit, that the taxpayer owes. The taxpayer, after offset in the amount of postwar credit, paid $229,890.31 in tax dollars and its actual tax liability as recomputed is $142,638.01, which when adjusted for the postwar refund credit element involved therein (an administrative adjustment) comes to an effective tax of $128,374.21, which when subtracted from the actual dollar payments made equals $101,516.16. To put it another way, the taxpayer's final liability is $142,638.01, but it showed before application of 722 a liability of $255,433.74. The postwar refund credit to which taxpayer is finally entitled is $14,263.80, whereas it received the benefit meanwhile of the credit in the amount of $25,543.37. True, the Government has not had the benefit *168 of any monies attributable or subject to postwar refund credit, it having paid taxpayer more by way of offset for such credit than taxpayer is ultimately entitled to, but that is the necessary effect of 781(c) requiring payment in cash to the taxpayer of any postwar credit remaining to its account after January 1, 1946, (and also of such repayment in cash of the postwar credit immediately upon payment of tax after July 1, 1945). The Government has, in effect, had in possession tax dollars (not including the offset for postwar refund credit) of the taxpayer in the amount of $229,890.37, whereas it is, after recomputation, entitled only to have had tax dollars in the amount of $128,374.21, representing an overpayment of such dollars to the extent of $101,516.16. By finding an overpayment before adjustment for and reduction in postwar credit (section 781(b)) in the amount of $112,795.73, effect is so given and the integrity of the procedures outlined in the sections here applicable is preserved. Our conception is that such amount will be reduced administratively by $11,279.57 to so adjust for the excess of postwar credit applied as an offset against tax for fiscal year 1944, section 781(b). *169 See H. Rep. No. 849, supra. [8] Decision will be entered under Rule 50 and the parties will submit computations consistent with this Opinion. Decision will be entered under *170 Rule 50. Footnotes
1. The making of credits and refunds is, of course, out of our hands and is an administrative matter over which this Court has no jurisdiction.↩
2. Petitioner showed on its return a tax liability in the amount of $177,220.19 and paid such amount as shown above. Upon audit of its return it was determined that the tax assessed for fiscal 1943 was $331.14 in excess of the amount due. A certificate of overassessment was made in favor of petitioner and the amount of $331.14 was credited on other tax liability. The 780(a) credit based on $177,220.19 appears to have been reduced by $33.11, based on the overassessment of $331.14, on April 19, 1946. The total payments of tax before us for consideration, therefore, are in the amount of $176,889.05.
3. "Subsection (e) of this section amends the last sentence of section 781(b)↩ of the Code, relating to the reduction, in certain cases, in the amount of the credit or refund of an overpayment of the excess profits tax for a taxable year for which a postwar credit is provided. For the purpose of the computation of interest upon such an overpayment, the last sentence of 781 (b) of existing law provides that such reduction shall be made at the time of the credit or refund or as of the time of the maturity of bonds issued with respect to the taxable year for which the overpayment was made, if that time is earlier. * * *." [Italics supplied]
4. See note 2, supra.↩
5. If for no other reason, this question must be answered in the circumstances of this case (even though our final view is favorable to petitioner) because of the peculiar problem raised by the parties' precise (but different) computations of overpayment for fiscal 1944, in the amount of $87,252.36 by respondent and in the amount of $101,516.16 by petitioner, submitted under Rule 50, and the necessity of ultimately entering an overpayment in an exact amount.
6. Under our holding supra the $142,638.01 figure representing petitioner's correct tax liability may not be reduced by 10 per cent for the postwar refund credit under sections 780 and 781 and may not be reduced even in part under section 784(a)↩. Therefore, petitioner's calculation reducing such amount to $128,374.21 and then subtracting that amount from payments of $229,890.37 to yield an alleged overpayment of $101,516.16 is erroneous. Petitioner consequently urges that if the $142,638.01 figure must remain unreduced, the $229,890.37 figure used by respondent is incorrect, and that the total payments from which its correct tax liability in the amount of $142,638.01 is subtracted in arriving at an overpayment is properly $255,433.74 and not $229,890.37.
7. The amount of tax is so referred to for convenience and clarity. The tax as originally shown on the return was in the amount of $249,059.97 and an additional assessment of $6,373.77 was made in 1948, totalling $255,433.74.↩
8. "For the purpose of the computation of interest upon such an overpayment, the last sentence of 781(b) of existing law provides that such reduction shall be made at the time of the credit or refund or as of the time of the maturity of bonds issued with respect to the taxable year for which the overpayment was made, if that time is earlier. Since under the amendment to section 780(c) of the Code, made by subsection (c) of this section of the bill, the bonds purchased with the postwar credit for any taxable year for which such credit is provided are payable at the option of the owner on or after January 1, 1946, subsection (e) of this section of the bill substitutes January 1, 1946, for the time of the maturity of the bonds in the parenthetical clause in the last sentence of section 781(b)↩. Under this amendment, if the credit or refund is made after January 1, 1946, the reduction in the amount of the credit or refund will, for the purpose of computing the interest upon the overpayment, be made as of January 1, 1946."