KLAMATH MEDICAL SERVICE BUREAU, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 60345. Filed November 22, 1957.

*Richard B. Maxwell, Esq.*, for the petitioner.
*Wendell M. Basye, Esq.*, for the respondent.

OPINION.

WITHEY, *Judge:* Petitioner claims section 23 (a) (1) (A) of the Internal Revenue Code of 1939 permits the deduction of the amounts here involved as ordinary and necessary business expenses. Respondent contends such amounts are in reality mere distributions of earnings to petitioner's stockholders or, in the alternative, that should such payments be held to constitute compensation for services rendered, they are in any event nondeductible because they are unreasonable in amount for such services. The controversy presents primarily a question of fact. Our ultimate findings are dispositive of both contentions.

We have found no decided case directly in point upon these facts.

It is true that this Court has approved, as indicating payment of compensation as distinguished from distributions of earnings, instances where the method of computing compensation was agreed upon retrospectively. *Streckfus Steamers, Inc.*, 19 T. C. 1; *Glenshaw Glass Co.*, 13 T. C. 296; *California Vegetable Concentrates, Inc.*, 10 T. C. 1158; *Draper & Co.*, 5 T. C. 822; *Vancoh Realty Co.*, 33 B. T. A. 918. However, as indicated by those cases, such arrangements, as is the case here, must be given close scrutiny in order to insure that earnings are not distributed under the guise of compensation for services rendered. That the payments here in controversy may have been in amounts which were reasonable is not dispositive of respondent's primary contention for, even though reasonable, unless such payments were compensation for services and not distributions of earnings, they would not be deductible as compensation for services. We think it must be concluded from this record that, with respect to that portion of the payments here involved which exceeds 100 per cent of the billings of petitioner's staff doctors, such payments were distributions of petitioner's profits and earnings. We are led to this conclusion because of the contract under which petitioner was bound to pay its member doctors for their services rendered. That instrument is ambiguous with respect to the compensation for such services. It does not specifically provide for the payment of over 100 per cent of the billings for such services but does provide specifically that the billings be in accordance with its fee schedule. It also provides specifically that staff physicians will furnish professional services to petitioner's subscribers in accordance with the terms and limitations of the contract between petitioner and such subscribers. It is also noted therein that the individual member physician has read such contracts. We assume therefrom that he was fully aware of the terms thereof when executing his employment contract with petitioner. Two of the contracts by which petitioner sells its services to subscribers provide on their face that petitioner's member physicians accept petitioner's fees as payment in full for services to persons or employees or their families whose net

income is less than $5,000 per year. It is provided further that, when the family income is in excess of $5,000 per year, the subscriber must make his own arrangements with the physician regarding fees in which event "[b]enefit payments made to the member by K. M. S. B. [petitioner] will act as a credit to total charges." It seems clear from this that petitioner has contracted with its member physicians that they will render their services to petitioner for fees equal to its fee schedule regardless of the fact that such fees may be in some instances below reasonable compensation therefor. This is not unrealistic when it is considered that staff doctors do not bear certain office administrative expense in their rendition of services to petitioner's subscribers which would be borne by them with respect to private patients. One hundred per cent of the billings of staff doctors for services rendered constitute the total expense *for such services* for which petitioner is liable under its employment contract. There is no express contract requirement that they be paid in excess of 100 per cent of billings *for their services.*

That petitioner intended to distribute earnings under the guise of payment for services rendered seems clear to us in the light of the testimony of the president of petitioner's board of directors during the years at issue. He testified relating to the computation of payments to be made to petitioner's member physicians as follows:

Q. Doctor, you testified as to the methods of arriving at the proportion of billed amounts, and you testified that in some cases that proportion was less than 100 per cent and upon occasion it was more than 100 per cent. Now, how was it determined how much more than 100 per cent was to be paid?

A. Well, as I described our method, each month we paid the doctors' billings which are based on this fee schedule, yardstick, or whatever you want to call it, and we paid 50 per cent of the billings. Then we hold in reserve and at the end of the six month period, after we meet our obligations, business-wise, for all of our expenses, we're obligated to accept on a proportionate basis what is there.

Q. You mean, in other words, that everything over expenses is distributed for the payment of the remaining 50 per cent of the billings?

A. No, that isn't exactly correct.

Q. What is correct?

A. Well, we retire our obligations. We improve our hospitals. We get new equipment in and see if we can do a better job in practice, and we set aside something in anticipation of such things as, you might call it a medical catastrophe, an epidemic, and then we take our proportionate basis of what is left, whether it be 80, 100 or perhaps somewhat more.

Q. I see. In other words, the entire remainder amount is distributed upon the remaining unpaid billings—

A. Yes.

Q. —over and above the expenses you have named?

A. Yes.

It seems clear from this testimony that under its contract with member physicians petitioner intended that all of its earnings in

excess of amounts necessary for its operation, planned expansion, and reserves were to be distributed to its member-stockholder physicians. Viewed in that light the contract provides not only a method of computation for services rendered but also a method for distribution of its profits to its stockholders.

We are convinced from this record that petitioner, after attaining its objective of providing adequate medical, surgical, and hospital facilities for the people of Klamath County, fully intended its earnings and profits should be distributed to its stockholders and that the method of doing so, was that with which we are here concerned. We are strengthened in this conviction by the fact that in determining the book value of its stock for purposes of transferring shares thereof only 100 per cent of staff doctors' billings is to be treated as accounts payable by petitioner. Nothing in the record leads us to believe that payments to staff doctors in excess of 100 per cent of their billings are authorized by the employment contracts either as compensation for other periods when payments were less than 100 per cent of billings or that the contracts authorize such excess payments *to be made for services* under any circumstance.

Respondent has rejected as a deduction more than the excess of payments to physicians over 100 per cent of billings. Why he has done so is not clear from his notice of deficiency or the pleadings. On brief, however, he contends that the portion of the deductions which he has disallowed has close relationship to the amounts shown by petitioner's internal bookkeeping to have been owed by its contract division to the hospital division but retained and not paid by the former; that this fact tends to characterize those unpaid amounts as distribution of hospital profits which latter division was not obligated to pay staff doctors because they had rendered no services to it.

We are unable to agree that the amounts "retained" by the contract division have the claimed relationship to the disallowed portion of proposed deductions. They are not the same and the variation is considerable. Nor are we able to agree that the hospital division was under no obligation to pay for staff doctors' services. As an integral part of the corporate entity which is petitioner, it was as surely obligated to do so as any other so-called division of petitioner. Surely nothing in petitioner's articles or bylaws provides otherwise. It is not true either that the doctors did not render services to the hospitals. In a very real sense, but for the services they rendered to hospital patients, there would have been little, if any, hospital income. It is reasonable to conclude petitioner would otherwise have been unable to utilize hospital facilities and would not have acquired them.

Even though we have found the amount of payments equal to 100 per cent of billings to be compensation for services, to the extent

they might be unreasonable they would not be deductible as such. See *Miller Mfg. Co.* v. *Commissioner*, (C. A. 4) 149 F. 2d 421.

Respondent relies heavily for support of his position that they are unreasonable upon the existence in Oregon of a Statewide organization of like character with petitioner and the fact that, although petitioner's last revision of its fee schedule was largely in line with that organization's fee schedule, to some extent it provided higher compensation for listed services. We agree that this evidence is worthy of consideration upon this issue, but do not find it to be conclusive in this case. Three physicians in good standing and reputation, two member stockholders of petitioner and one who was not related to petitioner in any way, testified that even the payments here involved in excess of 100 per cent of billings were below those to be expected in the private practice of medicine and surgery. We do not find this fact to be controlling here, but must give it some weight. The physicians did however testify in effect, two of them expressly, that such payments were unreasonably low for the services rendered even when the advantages of petitioner's bearing a portion of the costs which private practitioners would otherwise be forced to defray were taken into consideration. This testimony remains uncontradicted upon the record and we see no reason to give it less than its full weight. There is ample evidence that the services billed for were rendered and respondent does not claim to the contrary. We have therefore found as a fact that, to the extent of 100 per cent of the billings of staff doctors, payments to them by petitioner during the years at issue are reasonable in amount and are properly deductible as a business expense.

Reviewed by the Court.

*Decision will be entered under Rule 50.*